Argued April 3, affirmed April 26, rehearing denied July 14, 1914.

# REIFF v. PORTLAND.*

(141 Pac. 167; 142 Pac. 827.)

**Municipal Corporations—Public Improvements—Assessments.**

1. Under Portland City Charter, Section 375, providing that the improvement of each street or part thereof shall be made under a separate proceeding, the fact that along a portion of the street to be improved, where before the improvement in question there was a wooden bridge between portions previously improved by graveling, it was necessary to make a fill did not invalidate an assessment, where the entire improvement, including the part filled, was continuous.

**Municipal Corporations—Public Improvements—Reassessments.**

2. Portland City Charter, Section 400 (Sp. Laws 1903, p. 161), providing that, when an assessment for a street improvement shall be set aside or the council shall be in doubt as to its validity, the council may make a reassessment based on the special benefits to the respective parcels assessed, is valid and constitutional, and an assessment in compliance therewith is valid.

**Municipal Corporations—Public Improvements—Reassessment.**

3. To sustain a reassessment for a street improvement under Portland City Charter, Section 400, there must have been an actual attempt by the council, in good faith, to make an improvement and assess the cost in proportion to benefit, the proceeding must have failed because of omission to comply with some of the provisions of the charter relating to such assessments, and the improvement must have been made in substantial accord with the original contract, and the proceedings authorizing it.

**Municipal Corporations—Public Improvements—Reassessments.**

4. No notice need be given abutting owners of intention to pass a resolution for reassessment for a street improvement, and the resolution need not contain a finding that the original contract for the improvement had been substantially complied with.

**Municipal Corporations—Public Improvements—Reassessment.**

5. After a resolution for a reassessment for a street improvement has been passed by the Portland city council, notice thereof must be given to the property owners, and they must have an opportunity to appear and object to the assessment.

**Certiorari—Review—Scope and Extent.**

6. On a writ of *certiorari* to a city council, the court is restricted to an examination of the record and proceedings of the council, and cannot consider facts not found in the record.

*On the general liability of a municipality on failure to make reassessment after failure to enforce assessment, see note in 32 L. R. A. (N. S.) 176.

As to the liability of a municipality for temporarily interfering with access to property in making improvements, see note in 46 L. R. A. (N. S.) 620. And for presumption as to statutory authority of municipality to commit nuisance by alterations in highway, see note in 70 L. R. A. 581.                                    REPORTER.

**Municipal Corporations—Public Improvements—Reassessment.**

7. On a proceeding for reassessment for a street improvement, where the city gave due notice of the preliminary assessment and of the time when objections could be made, and property owners, by their attorney, filed with the auditor their written objections, and the council, after referring them to the city attorney and a committee, overruled them, the notice was sufficient, and the proceedings thereon regular.

**Evidence—Presumptions—Performance of Official Duty.**

8. The city auditor being the proper person to make a reassessment for a street improvement, it is presumed that he did his duty properly, and his certificate stating how he made the reassessment is presumed to be true.

**Municipal Corporations—Public Improvements—Reassessment.**

9. In assessing or reassessing for a street improvement, it is the duty of the officer in good faith to estimate the amount each parcel will be specially benefited, and in no case to assess a parcel an amount in excess of such benefit, and he must not impose on a parcel the cost of the improvement in front of it, unless the property will be benefited to that extent.

**Municipal Corporations—Public Improvements—Trespass on Abutting Property.**

10. In improving a street, a city has no right to pile earth and other material upon abutting owners' lands without their consent, and such action may be restrained by injunction, or the owners may maintain an action for damages, or have the material removed as a nuisance, if it is a nuisance, as authorized by Section 341, L. O. L.

**Municipal Corporations—Public Improvements—Assessment.**

11. That, in improving a street, a city put filling material on the lands of abutting owners, does not affect the validity of the assessment for the improvement.

**Municipal Corporations—Assessment—Review—Nature of Remedy—Existence of Other Remedy.**

12. The right to appeal from the decision of the city council in levying an assessment for a street improvement to the Circuit Court and have the amount properly assessable determined by a jury is an ample remedy to property owners without resorting to *certiorari.*

**Certiorari—Nature of Remedy—Discretion of Court.**

13. The granting of relief by *certiorari* rests in the sound discretion of the court, especially where the matters in controversy are of a public nature.

## ON PETITION FOR REHEARING.

**Municipal Corporations — Public Improvements — Assessments — Proceedings.**

14. Objections to the reassessment of the cost of a street improvement that it was not made as provided by law, but should have been made in accordance with special benefits, that the cost of improvement in front of each lot was assessed thereto contrary to the charter,

that the assessment includes the repair of separate parts of a street in one proceeding, and that the base and support of the fill for part of the street were extended onto adjacent property without right, and the cost thereof charged as part of the expense of the improvement, relate to questions of law which need no special finding of fact by council.

Municipal Corporations—Public Improvements—Assessments—Objections.

15. An objection by a property owner to matters affecting only the payment of her assessment for an improvement, and not the regularity of the proceedings, cannot be reviewed on *certiorari* brought by other property owners.

Municipal Corporations — Public Improvements — Assessments — Review—Certiorari.

16. Objections that the assessment for a street improvement is void because part of the improvement is made by extending the incline of the fill beyond the line of the street upon private property without purchase or condemnation, and that the abutting costs are assessed to the separate lots, instead of according to the special benefits derived by each lot being shown by the record, are reviewable by writ of *certiorari*.

Municipal Corporations—Public Improvements—Review—Certiorari.

17. Where the record shows that the charter method has been followed in making an assessment for a street improvement, error in judgment of the facts or in the computation producing the result, cannot be reviewed by writ of *certiorari*, but only by appeal.

Appeal and Error—Rehearing—Petition.

18. A petition for rehearing on appeal should state the grounds of the petition briefly and concisely, and separately from the argument.

Municipal Corporations—Public Improvements—Assessments—Review.

19. Where a proceeding was commenced in 1903 for a street improvement and no remonstrance was filed, and in 1908 the assessment of benefits was reviewed in the Circuit Court, the manner of making the assessment and the sufficiency of it only being questioned, and the proceedings were reversed and the cause remanded for a reassessment, a motion in the Circuit Court for an order requiring the auditor to add to the return to a writ of review the proceedings for the reassessment the proceedings relating to the initiation of the improvement, was properly denied, the irregularities or defects in prior proceedings not reviewed being waived by the adjudication setting aside the first assessment.

Municipal Corporations—Public Improvements—Assessments—Review.

20. Since the owners of property abutting on a street improvement are interested in the extension of a fill upon private property only to the extent of the increased cost of the improvement in excess of what it would have cost if held by a retaining wall, which is a question of fact, the remedy is by appeal and not by writ of *certiorari*.

Municipal Corporations—Public Improvements—Assessments—Review.

21.   Where the preliminary assessment by the city auditor and the ordinance levying an assessment both state that it is made according to the special benefits to the property assessed, the objection that the cost of the improvement abutting each lot is assessed to the lot, instead of according to benefits, cannot be raised by *certiorari,* being a question of fact.

From Multnomah: HENRY E. McGINN, Judge.

This is a proceeding by petition for a writ of *certiorari* by Joseph Reiff and others, against the City of Portland and others to review proceedings in making a reassessment of property within the city limits, to. pay for street improvements.  From a judgment for the defendants affirming the reassessment proceedings and dismissing the writ, plaintiffs appeal.

AFFIRMED.  REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondents there was a brief over the names of *Mr. Lyman E. Latourette* and *Mr. Frank S. Grant,* with an oral argument by *Mr. Latourette.*

Department 1.  MR. JUSTICE RAMSEY delivered the opinion of the court.

On September 21, 1910, the plaintiff filed a petition for a writ of *certiorari* to obtain a review of certain proceedings of the council of the City of Portland, had in making a reassessment of the property of certain adjacent lot owners in said city, for the payment of the expenses of a street improvement; the petitioners claiming that said proceedings were illegal and void, for reasons alleged in said petition.   The petition contains 27 pages, and hence it is impracticable to set it out in this opinion.

On October 7, 1903, the council of the City of Portland passed a resolution for the improvement of Seventeenth Street of said city from 58.5 feet north of the north line of Vaughn Street, to the south line of Marshall Street, in said city, in the manner stated in said resolution. The improvements contemplated by said resolution were made, and the city assessed the expense thereof upon the property adjacent to said street; but the Circuit Court of Multnomah County, upon a writ of review, prosecuted by interested parties, held that said assessment was invalid, for defects in said proceedings, and directed the city to make a reassessment of the expense of said improvement. Said judgment or order was made on July 6, 1908.

On March 23, 1910, the council of the City of Portland passed an ordinance, No. 20989, entitled "An ordinance making a reassessment for the improvement of Seventeenth Street from 58.5 feet north of the north line of Vaughn Street, to the south line of Marshall Street." This ordinance was approved by the mayor of said city on March 24, 1910, and by this ordinance the city levied certain reassessments upon the property of the plaintiffs, amounting to $5,574.79, for the improvement of said Seventeenth Street from 58.5 feet north of the north line of Vaughn Street to the south line of Marshall Street. The plaintiffs own property adjacent to said improvement, and said reassessment was made by said city to pay for the improvement of said street, made as stated *supra;* the assessment originally made by said city to pay for said improvement having been held invalid, for defects in the proceedings. The reassessment was made to pay for the same improvement for which the said invalid assessment was made. The plaintiff began

this *certiorari* proceeding, claiming that said reassessment is invalid.

After the allowance of said writ of review, the trial court allowed a motion of the defendants for an amended writ, and disallowed a motion of the plaintiffs for a further return to said writ. The rulings of the court upon these motions are assigned as error. But, in the view that we take of this case, the rulings of the court on said motions cannot materially affect our decision. Hence we will treat the questions for consideration as if the papers that the plaintiffs desired returned were in the record.

The reassessment was, in a sense, a continuation of the original assessment proceedings. There was no new improvement made, and the reassessment proceedings were had for the purpose of imposing a lien upon the lands of the adjacent property owners for the payment of the expense of said improvement, in accordance with Section 400 of the charter of said city.

1. The first point urged by the plaintiffs is that the reassessment is invalid, because the original resolution for the improvement of Seventeenth Street was invalid, in that it attempted to provide for a repair of two separate parts of Seventeenth Street, which had been formerly improved by gravel, and which parts of said street extended from the south line of Marshall Street to 50 feet north of the north line of Marshall Street, and were then separated by a wooden elevated bridge about 4 blocks long, where a second piece of gravel street commenced, which was attempted to be repaired in said resolution, etc.

Counsel for the plaintiffs contends that said resolution is invalid, under Section 375 of the charter of Portland, which, *inter alia,* provides:

"The improvement of each street or part thereof, shall be made under a separate proceeding."

This clause prohibits the improvement of two or more streets or parts of two or more streets in the same proceeding, but, whether it prevents the improvement of two or more parts of the same street in one proceeding, when the parts to be improved are disconnected, need not be decided here, because the improvement in question is all on Seventeenth Street, and the portions of the street improved appear to be *continuous* from 58.5 feet north of the north line of Vaughn Street to the south line of Marshall Street. The fact that along a portion of the part to be improved a fill was necessary did not invalidate the improvement.

2. Section 400 of the charter of the City of Portland (Sp. Laws Oregon, 1903, p. 161) provides that whenever an assessment for a street improvement has been or shall hereafter be set aside or amended by any court, or when the council shall be in doubt as to the validity of such assessment, the council may, by ordinance, make a new assessment or reassessment upon the lots, blocks, or parcels of land which have been benefited by such improvement, to the extent of their respective and proportionate shares of the full value thereof. Under said section, "such reassessment shall be based upon the special and peculiar benefits of such improvement to the respective parcels of land assessed, at the time of the original making, but shall not exceed the amount of such original assessment." Said section 400 has been before this court several times, and its validity and constitutionality are settled by the decisions of this court, and it is not necessary to re-examine those questions in this cause: *Duniway*

v. *Portland,* 47 Or. 103 (81 Pac. 945); *Hughes* v. *City of Portland,* 53 Or. 370 (100 Pac. 942).

Under said Section 400, *supra,* the reassessment therein authorized to be made must be "based upon the special and peculiar benefits of such improvement to the respective parcels of land assessed," and the assessment upon any lot or parcel should not exceed the special and peculiar benefit resulting to such lot or parcel of land from such improvement.

Section 400, *supra,* provides the manner in which a reassessment shall be made, and, if the city in this case complied with said action, the reassessment made is valid.

3. In the first place, there must have been an actual attempt by the council, in good faith, under the regular procedure provided by the charter, to make an improvement, and assess the cost thereof to the property benefited, in proportion to such benefit. The proceeding must have failed, because of an omission to comply with some of the provisions of the charter relating to such assessments. The proceeding must have been set aside by some court of competent jurisdiction on account of defects therein, or the council must have doubts as to the validity of such proceedings. The original contract for the improvement must have been substantially complied with, and the improvement must have been made in substantial accordance with the contract, and the proceedings authorizing it.

4. No notice to abutting property owners need be given of the intention of the council to pass a resolution for reassessment, and such a resolution need not contain a finding that the original contract for the improvement had been substantially complied with: See, on all these points, *Hughes* v. *City of Portland,* 53 Or. 383, 385 (100 Pac. 942).

5. After the resolution providing for the reassessment has been passed by the council, notice thereof must be given to the property owners, and they must have an opportunity to appear and object to the reassessment, if they desire to do so.

6. This being a writ of *certiorari,* we are restricted to an examination of the record and proceedings of the council, and cannot consider facts that are not found in the record.

7. The plaintiffs contend that they were not properly notified of the intention of the council to make said reassessment and given a proper opportunity to make objections thereto. The council on August 25, 1909, adopted a resolution for the making of said reassessment, and directed the auditor of said city to prepare, within 90 days from said date, a preliminary reassessment upon the lots, blocks, and parcels of land within the district benefited by said improvement, and give due notice to the owners of all property affected by said reassessment, in the manner prescribed by the charter.

On November 24, 1909, the auditor presented to the council of said city his preliminary reassessment of the property affected by said improvement, and it was filed on said date. Notice was given by the auditor of the making of said preliminary reassessment, and that any objections to said assessment and reassessment should be filed in writing with the auditor within 10 days from December 4, 1909, the last day of publication of said notice, and that objections to said reassessment would be heard by the council at the regular meeting thereof on December 22, 1909, etc. Said notice seems to be in proper form, and it was published and served according to law.

On December 13, 1909, the plaintiffs, by their attorney, filed with the auditor lengthy objections to said reassessment. In these objections the plaintiffs contended that said reassessment was illegal and void, for several reasons. One objection made to said reassessment was that it was not made in accordance with the special and peculiar benefits to the property by reason of said improvement, and apportioned equitably throughout the district. Another objection was that the city in *one* proceeding attempted to make a repair of two separate parts of Seventeenth Street that had formerly been improved with gravel, and which parts of said street were separated by a wooden elevated bridge about four blocks long. But the record shows that said improvement was not in separate parts of said street, but *continuous,* as stated *supra.* Another objection was that the city, in making a fill in said improvement, caused a large amount of earth and other filling material to be put upon the private property of the people opposite the wooden bridge, without their consent and without obtaining any right to do so, and that the city had attempted to appropriate said private property to a public use, in violation of the Constitution, and without compensation, and that, in doing so, the city was violating the law, and a trespasser. Said objections allege also that the city, in making said reassessment undertook to charge said property owners for the expense of said trespassing upon their property, in building the slopes of said fill upon their property, .and attempted also to charge the entire cost of the fill in the street upon the abutting property, and that said fill was not made for the benefit of the abutting property, but for the benefit of other property in the district, and the city at large; that it was an illegal and unjust

charge upon the abutting property; and that the said charge upon the abutting property owners is greatly in excess of the benefit to the property abutting the bridge; and that the reassessment upon the property of other persons is a great deal less than the benefit to their property, etc.

8. A. L. Barbour, auditor of said city, made said reassessment, and, in his certificate appended thereto, he certified as follows:

"I, A. L. Barbour, auditor of the City of Portland, Oregon, do hereby certify that the whole cost of said improvement was the sum of $10,762.12; that I have viewed the reassessment district and each lot, part thereof, and parcel of land therein; that the property within the reassessment district is benefited in the full sum of such cost; that I have ascertained what I deem to be the special and peculiar benefit derived by each lot or part thereof or parcel of land within said district by reason of such improvement; and I hereby apportion the cost of said improvement to the lots, parts of lots, and parcels of land within the said district, in accordance with the special and peculiar benefits derived thereby, in the amount set opposite the number and description thereof, and to the extent of their respective and proportionate shares of the full value thereof. I further certify that each lot, part of lot, or parcel of land within said district is especially and peculiarly benefited by said improvement in the amounts so set forth, and, in my judgment, said property should be reassessed in such amounts," etc.

The foregoing certificate of the auditor shows on its face that said reassessment was properly made, and we do not find that his certificate is not true. The auditor was the proper officer to make said reassessment, and he is presumed to have done his duty properly, and his certificate stating how he made said reassessment is presumed to be true.

9. In assessing or reassessing the expenses of street improvements, the officer charged with that duty is required to act in good faith. It is his duty to estimate in good faith, and as accurately as he can, the amount that each parcel of land subject to assessment will be specially and peculiarly benefited by the improvement, and in no instance to assess upon a piece of property an amount in excess of such special and peculiar benefit. He has no right to sit down and figure what the improvement in front of property has cost, or will cost, and impose that amount upon the property, unless the property has been, or will be, benefited to that extent by the improvement.

The record of the council shows that on December 22, 1909, a remonstrance by Anna F. Grace et al. and Ralph R. Duniway, attorney for objecting property owners, was read in the council, and, on motion, it was referred to the committee on streets.

On February 21, 1910, said committee wrote the attorney for the plaintiffs, notifying him that the ordinance making a reassessment for the Seventeenth Street improvements, and the remonstrances against the same, would be considered by said committee at the next regular meeting of the committee, to be held on March 4, 1910, at 2 o'clock P. M.

In a letter of the date of March 4, 1910, addressed to said committee the attorney for the plaintiffs acknowledges receipt of the committee's letter to him, notifying him that the remonstrances against the proposed reassessment would be considered by the committee on March 4, 1910, at 2 o'clock P. M., and in this letter Mr. Duniway says that he does not believe that the committee had any jurisdiction or power to act on the reassessment ordinance and objections, or that the council could then legally pass upon his ob-

jections and enact said ordinance. He said he would attend said meeting of the committee if it should be possible for him to do so, but expressed doubts as to his ability to attend.

The objections of the plaintiffs to said reassessment were referred also to the city attorney by said committee, and the city attorney reported that, if Mr. Duniway's objection that said reassessment was an attempt to impose the cost upon the abutting property without regard to benefits, and as a mere mathematical calculation, was true, the rule of assessment should be changed.

On March 18, 1910, the committee on streets reported to the council that they had considered the ordinance for the reassessment of the cost of the improvement of said Seventeenth Street, and the remonstrances against the same; that the remonstrators were called, and, no one appearing, the remonstrances were considered by the committee, and the committee recommended that the remonstrances be overruled, and the ordinance passed. Said report is dated March 18, 1910, and it was filed March 22, 1910.

At a regular meeting of the council on March 23, 1910, the report of said committee was presented to the council, and, on motion, it was adopted, the said remonstrances were overruled by the council. Said ordinance was passed by the council March 23, 1910, and approved by the mayor March 24, 1910.

The city gave due notice of the making of the preliminary reassessment and of the time within which objections thereto could be made. The plaintiffs, by their attorney, filed with the auditor their written objections thereof. These objections were presented to the council and read, and, by the council, they were

referred to the committee on streets. This committee referred said objections to the city attorney, and he made a report concerning them to the committee. The committee notified the plaintiffs' attorney of the time when they would consider said objections or remonstrances. The attorney did not appear before the committee, and the committee, after considering said objections, reported to the council that they had considered them, and recommended that the objections be overruled. This report was presented to the council at a regular meeting, and read to the council, and the council, on motion, overruled said objections, and, at the same session, passed the ordinance making the reassessment. We hold that the plaintiffs had due notice of said proposed reassessment, and that they filed their objections thereto, and that those objections were heard, decided, and overruled by the council, and that the proceedings of the council were regular in this respect.

There is another matter that should not be overlooked, relating to the opportunity given to persons whose lands are reassessed to have determined the amount that should be assessed against their lands to pay for such an improvement. Section 401 of the charter of Portland confers upon persons objecting to such reassessment the right to appeal from the decision of the council to the Circuit Court, and have the amount to be assessed against their property determined by a jury trial. Hence it appears that the charter of Portland affords the adjacent land owners proper remedies against unjust reassessments by the council.

10, 11. The plaintiffs contend also that the city, in making said improvements, made a large fill along a portion of Seventeenth Street, and in doing so, wrongfully and without the consent of the adjacent land

owners, caused a large amount of earth and other fill-
ing material to be put upon the land owned by the
persons along said street, and that, in doing so, the
city violated the law, and was a trespasser, and that,
for this trespass, this court should annul said reassess-
ment.

We think that the city had no right to pile earth and
other material upon the abutting owners' lands, and
that, if it was done without their consent, it was a tres-
pass, for which the land owners could recover damages
in an action at law.

In *Hendershott* v. *Ottumwa,* 46 Iowa, 659 (26 Am.
Rep. 182), the court says:

"It is equally well settled that if, in making changes
in the natural surface of streets, the city is negligent
in construction, so that the adjacent lots are injured
by reason of such negligence, the city is liable for such
injury."

In *Ashley* v. *Port Huron,* 35 Mich. 301 (24 Am. Rep.
552), the court says:

"If the corporation [the city] send people with picks
and spades to cut a street through it [land] without
first acquiring the right of way, it is liable for a tort;
but it is no more liable under such circumstances than
it is when it pours upon his land a flood of water by a
public sewer so constructed that the flooding must be
a necessary result. The one is no more unjustifiable,
and no more an actionable wrong, than the other."

In *Vanderlip* v. *Grand Rapids,* 73 Mich. 522 (41
N. W. 677, 16 Am. St. Rep. 597, 3 L. R. A. 247), the
syllabus is:

"In this case the grading of a city street in such a
manner as to raise an embankment upon 30 feet of the
entire frontage of an abutting lot, and thereby bury
a portion of the dwelling-house of the owner therein,
is held to amount to a taking of private property for

the public use, within the inhibitions of the Constitution; and that in such a case the law does not require such owner to wait until his property is completely destroyed, and then turn him over to an action of trespass to recover his damages, but equity, when appealed to, will interfere and restrain such threatened destruction.''

See, also, *Giaconi* v. *Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180), and *Western Penn. R. Co.* v. *City of Alleghany,* 92 Pa. 100.

In this case it is claimed that the city made a fill the full width of the street, and made a slope extending onto the lands of the abutting owners. We hold that the city had no right to do this without the consent of the owners. However, it is probable that the city could have obtained a right to use the property of the abutting owners by proper proceedings and paying for it.

*Moore* v. *Albany,* 98 N. Y. 406, 407, is a case closely in point, and the court there says, *inter alia:*

''As to the embankments outside of the street lines. In grading a street it seems to us clear that the public authorities have no right to invade private property outside of the street lines. If it becomes necessary to use or interfere with such property, they must in some way acquire the right to do so. These embankments were built for the purpose of making the street within the street lines. In order to grade the street to the full width thereof, it was necessary either to build retaining walls on the sides of the street within the street lines, or to support the street by sloping embankments upon the adjoining lands. It is evident that the latter mode was the most reasonable and economical. The lands outside of the street lines are not permanently occupied or used for the street or appropriated to public travel. They remain in the possession and occupancy of the owners thereof, subject to the burden of the earth cast thereon. These embankments are evi-

July, 1914.] REIFF *v.* PORTLAND.. 437

dently not injurious to the adjoining owners, as it is for their interest to have their lands filled up to the grade of the street. It cannot be presumed that they will dig away and remove these embankments, and, if they should, the street would still remain, and the city could support its sides in some other way. The only practical remedy for the owners of lands thus invaded is to sue the city or those who placed the earth upon his lands without his consent, express or implied, for the wrong, and in such an action he can recover his entire damage for a permanent appropriation of his land for the embankment: *Henderson* v. *N. Y. C. R. R. Co.,* 78 N. Y. 423. It does not appear that any of the owners of the land thus invaded make any objection to the embankments. They could, if they had desired, have restrained the deposit of earth upon their lands by an equitable action. That they did not do. They could have objected to the deposit of the earth, and it does not appear that they did that. They did not even object to the assessment made upon their lands on account of these embankments when they appeared before the board of contract and apportionment, and before the common council, in reference to the assessment. These embankments have remained there since the early part of the year 1877, and they have not been disturbed, and there is the highest probability that they never will be. If any attempt should be made by the land owners to disturb them, there is ample power under the city charter to vest the title to the lands in the city for the purpose of the street: Laws 1870, c. 77, tit. 7, par. 1. These embankments are not the street, but are there simply for the support of the street which is upon the land acquired for the purpose thereof, and. their cost was a necessary and proper expense in the construction of the street.''

In *Marshall's Appeal,* 210 Pa. 538, 539, (60 Atl. 160), the court says:

''The only question argued is whether the city could assess against the abutting properties a part of the cost of stone walls built at places along the sides of

the avenue. \* \* Some of these walls were built *in part,
and some of them wholly, on the adjoining properties.*
None, however, were built on the land of the appellants.
The determination of the plan and manner of improv-
ing the avenue rested with the municipal authorities,
and the abutting properties were liable to assessments
to the extent to which the local improvement was a per-
manent benefit to them. If the walls were a necessary
part of the street improvement, and the right to main-
tain them on private property was secured by the city,
their cost was properly included in the assessment.''

In the case of *Davis* v. *Silverton,* 47 Or. 177 (82 Pac.
16, 18), the plaintiff claimed that the proceedings for
the street improvement were, as to the assessment
against her property, invalid, and she sought to have
the collection of said assessment enjoined. The plain-
tiff had built a stone wall on what she contended was
the line between her property and the street that was
improved. In said suit she contended that the city, in
making said improvements, had *encroached upon her
land* and destroyed said stone wall. In deciding the
case the court *inter alia* says:

''If in reality there was *an encroachment upon the
plaintiff's lots,* it was not by design to widen the street
beyond the true boundary, *and it could not, by any
logical course of reasoning or principle involved, in-
validate the proceedings for the improvement of which
the plaintiff complains.*

We do not think that the encroachment upon the
plaintiffs' lands or the assessing of the expense thereof
to the adjacent owners, in the manner claimed by the
plaintiffs, affected the validity of the reassessment
proceedings.

If said encroachment upon the lands of the plaintiffs
occurred without their express or implied consent, it
may be that they could maintain a suit in equity to

enjoin the collection of that part of the assessments that could be shown to have been incurred to pay the expense of putting the earth on the plaintiffs' said premises; but we do not decide whether such a suit could be maintained or not. But said encroachment upon the lands of the plaintiffs, and the assessing of the expense thereof to the adjacent owners, do not invalidate said reassessment proceedings. The council had jurisdiction to make said reassessment, and its action was not rendered invalid by the encroachment complained of.

The plaintiffs could have prevented said encroachments upon their property by a suit for injunction. They could also have maintained an action at law to recover damages for the injury to their premises by the placing of earth upon them, and to have said earth removed as a private nuisance, if it was a nuisance, under Section 341, L. O. L.

12. As stated, *supra,* the plaintiffs had a right to appeal from the decision of the council to the Circuit Court, and have the amount that was properly assessable to their lands for said improvements determined by a jury. They had ample remedies for the redress of their grievances without resorting to *certiorari* proceedings.

It is a general rule that the remedy by *certiorari* should not be granted, if efficient relief can be or could have been obtained by resort to other available modes of redress: 6 Cyc. 742.

13. It is also a general rule that the granting of relief by *certiorari* rests in the sound discretion of the court (6 Cyc. 748), and this is especially so where the matters in controversy are of a public nature.

In *Burnett* v. *Douglas County,* 4 Or. 392, Mr. Justice McARTHUR, says:

"In all cases where the proceeding sought to be reviewed involves a matter of public interest affecting a great number of persons, the allowance of the writ is in the sound discretion of the court, and, if refused, the refusal is not subject to review or appeal."

In *Oregon R. & N. Co.* v. *Umatilla County,* 47 Or. 208, 209 (81 Pac. 352, 355), the court says:

"When it appears in a proceeding instituted by an individual taxpayer to annul the tax assessed against his property, on account of some insufficiency or irregularity in the manner of the assessment or the description of the property, that no equitable grounds exist for the allowance of the writ, it should ordinarily be denied, leaving the taxpayer to such remedies, as the law otherwise affords him": See, also, *Woodworth* v. *Gibbs,* 61 Iowa, 398 (16 N. W. 287); *Knapp* v. *Heller,* 32 Wis. 469.

We have examined the questions presented by this appeal, and we hold that the council of the defendant city had jurisdiction to reassess the cost of the street improvement in controversy, and that said reassessment proceedings are regular and valid, and that there was no error in the proceedings of the court below.

The judgment of the court below is affirmed.

                                          AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE EAKIN concur.

---

Denied July 14, 1914.

ON PETITION FOR REHEARING.

MR. JUSTICE EAKIN delivered the opinion of the court.

The writ in this case brings up for consideration only the objections to the reassessment of the cost of

the improvement of Seventeenth Street, filed by the plaintiff before the council on December 13, 1909, pursuant to the notice of date November 24, 1909, appointing December 22d for hearing said objections by the council. The so-called objections, instead of being briefly and concisely stated separately from the argument, are so mingled with the recitals, suggestions and criticisms that it is difficult to find just what is the real objection. It is first objected that the reassessment is as illegal and void as the one set aside by the court, and that it was not made in the manner provided by law, but should have been made in accordance with the special benefits; second, that the cost of improvement in front of each lot was assessed thereto contrary to the charter; third, that the assessment includes the repair of two separate parts of Seventeenth Street in one proceeding, and is therefore illegal; fourth, that it extended the base and support of the fill for part of the street on to adjacent property without right, and charged the cost of the extension as part of the expense of improvement, thus rendering the proceeding void and making it impossible to levy an assessment thereon; and, fifth, there is special objection by plaintiff Lewis as to matters affecting only the payment of her assessment and not the regularity of the proceedings.

14. The first four objections relate to questions of law which need no special finding of fact by the council: *Hughes* v. *City of Portland,* 53 Or. 389 (100 Pac. 942).

15, 16. The petitioners are not affected by the fifth objection nor interested therein, and it cannot be considered on this review. These objections do not call the attention of the council to just what part of the reassessment was wrong or incomplete, or in what re-

gard, in a manner that it may rectify the assessment or answer the objection. However, considering the matters sought to be questioned, as gathered from the brief and oral argument, we understand there are two principal objections urged to the reassessment: (1) That the assessment is void because part of the improvement is made by extending the incline of the fill beyond the line of the street and upon private property without purchase or condemnation; (2) that the assessment is made on the theory of abutting costs assessed to the separate lots, instead of according to the special and peculiar benefits derived by each lot to the extent of its respective proportionate share of the costs, as provided by the charter. These two elements relate to the proceeding, and they can be raised by review, as they are shown by the record.

17. Thus the record may be made to disclose that the assessment is accomplished by the charter method; but when the record shows that the charter method has been followed, error in judgment of the facts in relation thereto or in the computation producing the result cannot be reviewed. That can be questioned only by appeal, where a jury trial may be had.

18. In addition to what has been said by Mr. Justice RAMSEY in the opinion, we find the petition for rehearing is subject to the same criticism made above to the objections to the assessment that the statement of the ground of the petition should be brief and concise, and made separately from the argument. First, it is urged that the slopes of the fill, being upon private property, to that extent the city is a trespasser, which, it is contended, renders the proceeding void, and the assessment noncollectible. No other lot owner is injured in or affected by that matter, and his remedy was to have enjoined the city in the first instance, or he may now

sue for damages; but the work of improvement has been done, the whole district has the benefit of it, and the city's right to the cost is not affected by the trespass.

19. As to the motion made in the Circuit Court for an order requiring the auditor to add to the return the proceedings relating to the initiation of the improvement, we find that when a city adopts a resolution to improve a street and notice is given thereof, property owners may file objections or remonstrances against the improvement, and if no objection or remonstrance is filed, then the jurisdiction of the council is deemed complete: Section 378 of the charter. The proceeding for this improvement was commenced in 1903, and no objection or remonstrance was filed thereto. That was the time and place for plaintiffs to have objected to the inclusion of two separate portions of a street in one proceeding, and, the question not being then raised, it was waived. In the year 1908 the assessment of benefits made by the council by ordinance No. 14,144 was reviewed in the Circuit Court by the plaintiffs. Only the manner of making the assessment and the sufficiency of it were questioned. The writ was sustained, the proceedings reversed, ordinance No. 14,144, making the assessment, was held void, and the cause remanded for a reassessment upon the lots which have been benefited by the improvement to the extent of their respective and proportionate shares of the full value thereof. By that adjudication all irregularities or defects in prior proceedings not reviewed are deemed waived. Therefore the proceedings sought to be added to the return by the motion of plaintiffs are immaterial here, and ordinance No. 14,144 was held void and cannot affect this case. The motion for an additional transcript was properly de-

nied. The reassessment is the effort of the council to make it according to the mandate of the Circuit Court, and is the only proceeding for review.

20. As to the assessment of the cost of the slopes of the fill, the petitioners are only interested in or affected by the extension of the fill beyond the street to the extent that the same has increased the cost of the improvement in excess of what it would have cost if held by a retaining wall, and the cost to the district probably should be reduced that amount, but that is a question of fact, not only requiring the engineer's measurements and estimates, but the testimony of expert witnesses, as to what was the excessive cost, which cannot be tried out on review. The remedy, if any, of the property owners injured or dissatisfied with the reassessment is appeal under Section 401 of the charter, which is intended to reach just such questions as this, but it does not go to the regularity of the proceedings.

21. As to the second question concerning the method of making the assessment according to benefits, in the preliminary assessment made by the auditor it is stated that he viewed the district and each lot, and advises that the property in the district is benefited to the amount of the cost of the improvement; that he has ascertained what he deems to be the especial and peculiar benefit derived by each lot by reason thereof; that he apportions the cost of said improvement to the lots in accordance with such benefits to the extent of their respective and proportionate shares of the full value thereof, setting out each lot, and the assessment so found. The city council, by ordinance No. 20,989, makes the same statement as to the manner of assessment, and declares the assessment accordingly. There is no suggestion that the manner of making this assess-

ment is erroneous, but only as to the result and the inclusion of the cost of the slopes of the fill, which we deem without merit.   These are questions of law. The purpose of the plaintiffs in this review proceeding seems to be to require the city council to so set out the facts involved in its reassessment, its reasons therefor, and its methods of arriving at conclusions, in order that they may try out the facts in the court on review. Section 401 of the charter is intended to determine the specific amount to be assessed against any particular property by appeal, where the facts may be presented to the jury.   The writ of review was intended to determine from the record whether the proceedings are regular and the method adopted the proper one, but it cannot review the facts or determine the result of a reassessment.   The determination by the council of the amount the property was specifically and peculiarly benefited by the improvement and the proportionate share of the cost to be charged to each lot, in the absence of fraud or demonstrable mistake of fact, is conclusive, except as a right of appeal may be given by the charter, or unless it has proceeded upon an erroneous principle of law: *Hughes* v. *City of Portland,* 53 Or. 385 (100 Pac. 942).   The amount of assessment of any lot is left to the judgment of the council, and when it has exercised its judgment its decision is final, except as above mentioned.   The principal objection raised by them is that the cost of the improvement charged to their properties is in excess of the benefits and in excess of their proportionate share thereof, and the council must determine these matters as issues of fact. It has determined that the lots mentioned in Section 1 of ordinance No. 20,989 are especially and peculiarly benefited by the improvement to the extent of their respective and proportionate shares thereof, and thus

complies with Section 400 of the charter and with the order of the Circuit Court, and that cannot be reviewed on this writ. The amount of the benefit is a matter of opinion, and the expression of that opinion in figures is all that is contemplated by the Hughes' case, and the council can do no more. The further remedy of the plaintiffs is under Section 401 of the charter.

We think the plaintiffs had their case fully considered at the hearing by the original opinion. The petition is denied.

AFFIRMED. REHEARING DENIED.

MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.

MR. JUSTICE BURNETT dissenting.