Argued February 4, reversed and suit dismissed March 1, 1921.

## FAY *v.* PORTLAND.

(195 Pac. 828.)

**Certiorari—Municipal Corporations—Court Limited to Record Certified on Review of Reassessment Where Petition and Return Defective; No Demurrer for Defective Petition, as Only Remedy is Motion to Quash or Order of Court.**

1. A writ of review is allowed on a petition *ex parte*, the only answer to the writ being return, and no demurrer will lie for any defect of the petition, the only remedy therefor being a motion to quash the writ, or order of the court under Section 610, Or. L., for further return, if the writ be incomplete, and, where the petition to review the city's reassessment for street paving remains defective, the court is limited to an examination of the city's own record to determine if there was error.

**Municipal Corporations—Assessment of Easements for Street Paving Held Improper.**

2. A right of way within or outside of a street is not a lot or parcel of land, but only an easement not assessable for street improvements, in view of Portland City Charter, Sections 374, 383a, 389, 394, 400, and its having been erroneously assessed warranted the city council in determining the assessment invalid and reassessing.

**Municipal Corporations—Record Held not to Show Objections to Reassessment Because of Agreement for Payment by Installments.**

3. In a proceeding to determine the validity of a reassessment for street paving, record *held* not to show any objection made on the ground that property owners had been granted leave to pay the assessment installments with interest under the Bancroft Act, and that a contract between them and the city had been established, the obligation of which would be violated by reassessment.

**Municipal Corporations—Letters of Protest Held not Valid Objections to Paving Reassessment.**

4. In a proceeding by a city for reassessment of lots for paving improvements, letters of protest to a syndicate which had sold lots guaranteeing the amount of assessment against each and asking that the syndicate stand any increase were not a protest to the city council, and the syndicate's expressed desire that the council confine the assessment exclusively to its own property so as to protect itself against its purchasers was not a valid objection to reassessment.

**Municipal Corporations—Record upon Reassessment for City Paving Held to Show Objections were Considered.**

5. Upon review of proceedings of the city council for reassessment for street paving, a contention that the city council did not pass upon objections to reassessment *held* not sustained by record, which indicates that the owners had every opportunity to be heard.

**Municipal Corporations—Council Held Within Its Jurisdiction in Reassessing for Street Paving.**

6. In a proceeding to review a reassessment by the city council for street paving, *held* that the council did not exceed its jurisdiction in the matter of reassessment; the first assessment being invalid for error.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

The plaintiff sued out a writ of review concerning the regularity of a reassessment to cover the expense of paving streets in a certain improvement district in the City of Portland. Upon consideration of the record presented to it, the Circuit Court canceled the proceedings for the reassessment, and the defendants appeal.　　REVERSED AND SUIT DISMISSED.

For appellants there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, *Mr. Walter P. La Roche,* and *Mr. L. E. Latourette,* with an oral argument by *Mr. Grant.*

For respondents there was a brief over the names of *Mr. Conrad P. Olson, Mr. Ralph R. Duniway,* and *Messrs. Wilbur, Spencer & Beckett,* with an oral argument by *Mr. Olson.*

BURNETT, C. J.—1. A petition for a writ of review is presented to the Circuit Court or judge thereof, and the writ is allowed thereon *ex parte.* The only answer to the writ is a return. No demurrer will lie on account of any defect in the petition. If that document is insufficient, ·the only remedy for the defendant in the writ in that respect is to move to quash the writ: *McCabe-Duprey Tanning Co.* v. *Eubanks,* 57 Or. 44 (102 Pac. 795, 110 Pac. 395); *Kinney* v. *Astoria,* 58 Or. 186 (113 Pac. 21). There was no such motion in the instant case. On the other hand, "if the return to the writ be incomplete, the court may order a further return to be made": Or. L., § 610. There is no motion in the record before us calling for a further return. The petition for the writ is *functus officio* when the return is made, and "thereafter ceases to be operative for any purpose except possibly that reference may be had to it to ascertain the errors assigned": *Curran* v. *State,* 53 Or. 154 (99 Pac. 420); *Reiff* v. *Portland,* 71 Or. 421, 429 (141 Pac. 167, 142 Pac. 827, L. R. A. 1915D, 772). Under these circumstances the only basis we have for our consideration of this case is the record of the city council sent up as a return to the writ. In other· words, the return has submitted to the examination of the court the doings of the city authorities as preserved in their own record, and it is for the court to determine from an inspection of that record whether the officers of the city are justified or condemned by that memorial. No issue *dehors* the rec-

ord presented for review can be litigated in this proceeding.

2. By Section 374 of the charter of the City of Portland, the council, when it deems it expedient, is empowered to improve the streets of the city, to determine the character, kind, and extent of such improvement, "to levy and collect an assessment upon all lots and parcels of land specially benefited by such improvements, to defray the whole or any portion of the cost and expense thereof, and to determine what lands are specially benefited by such improvement and the amount to which each parcel or tract of land is benefited."

Section 383a substantially adopts what is popularly known as "the Bancroft Act," as a system for the benefit of the rate-payer in allowing his assessment to be paid in ten equal installments. That act is embodied in Chapter XV of Title XXVII, Or. L., and, according to *Colby* v. *Medford,* 85 Or. 485 (167 Pac. 487), is paramount in its operation as a general state law, and must prevail over the charter in case of a conflict. In substance, the act provides respecting street improvements that when the city shall have proceeded to improve a street and shall have assessed the cost thereof to the property benefited thereby or liable therefor according to the provisions of the municipal charter, the owner of property assessed for $25 or more, at any time within ten days after the notice of the assessment is first published, may file with the auditor or other official keeping the records of the town, a written application to pay the assessment in installments. The applicant and property owner is required to waive in his petition all irregularities and defects, jurisdictional or otherwise, in the proceedings for the improvement for which the

assessment is levied, and in the apportionment of the cost, and must agree to pay the assessment in ten equal installments with interest at the same rate expressed in the bond issued to pay for such improvement. A description of the property assessed must be furnished. No application shall be entertained if the amount of the assessment together with any previous assessment for improvement of the same property and remaining unpaid shall equal or exceed the valuation of the property as shown by the last tax-roll of the county in which it is situated. This inhibition may be avoided by a cash payment of the excess of unpaid assessments over the tax-roll valuation. All applications are to be kept and entered in a book from which, after the time for filing such petitions has expired, a lien docket shall be made up, covering unpaid assessments described in the petitions.

Under Section 394 of the charter, after the completion of any improvement, or when it has reached a stage so that the whole cost can be determined, the city engineer shall file with the auditor a report of the cost of the betterment. The latter officer "shall apportion the cost thereof (except the share to be paid in case of a street improvement by railroad or street railway companies, by reason of their use of the streets) upon the lots, parts of lots, and parcels of land benefited thereby and within the assessment district." The cost within the terms of this section is the contract price, plus cost of right of way, expense of condemnation, and a sum not to exceed 5 per cent of the contract price, for advertising, engineering and superintendence. After the apportionment, the auditor gives notice of the same in the manner provided, declaring that the assessment has been apportioned,

is on file in his office subject to examination, and also that any objection to such apportionment shall be made in writing and filed with the auditor within ten days from the first [last] publication, and that the objection will be heard and determined by the council before the passing of any ordinance assessing the cost of the improvement.

Section 389 provides that if it be found upon the completion of the improvement that the sum assessed therefor is insufficient to pay the cost thereof, and the amount charged to any lot or part thereof or tract of land, is less than the benefits accruing thereto, the council must ascertain the deficit and by ordinance reassess the land so benefited in excess of the original assessment. The assessment for the deficit is entered in a separate column in the docket of city liens, with the date thereof, and becomes thereafter a lien upon the lot, the same as the sum originally assessed.

It is set down in Section 400, known as "the re-assessment section," that when any assessment has been set aside, annulled, declared, or rendered void or its enforcement refused by any court of this state or any federal court having jurisdiction, or when the council shall be in doubt as to the validity of the assessment or any part thereof, that body may by ordinance make a new assessment or a reassessment upon the lots, blocks, or parcels of land which have been benefited by the improvement, to the extent of their respective and proportionate shares of the full value thereof; but the assessment shall not exceed the amount of such original assessment, and the council may adopt a different plan of apportionment of such cost, when in its judgment necessary to secure an equitable assessment. It is said in that section:

"The proceedings required by this charter to be had prior to the making of the original assessment shall not be required to be taken or had within the intent of this section. Such reassessment shall be made and shall become a charge upon the property upon which the same is laid, notwithstanding the omission, failure or neglect of any officer, body or person to comply with the provisions of this charter connected with or relating to such improvement and assessment and notwithstanding the proceedings of the council, executive board, board of public works, or any officer, contractor or other person connected with such work may have been irregular or defective, whether such irregularity be jurisdictional or otherwise."

Provision is made for giving notice of the reassessment and fixing a time when the council will hear and consider objections thereto by the parties aggrieved. Within ten days after the last publication of the notice, the owner of any property, or anybody having an interest therein, may file his objection in writing to such assessment, with the auditor. The hearing appointed may be adjourned from time to time by the council, and that body has power to revise and correct or to set aside and order the remaking of such assessment, and shall pass an ordinance approving and confirming such reassessment as corrected and remade by it, and such decision shall be a final determination of the regularity, validity, and correctness of the reassessment, except as otherwise provided in the charter. The reassessment is to be entered in the docket of city liens and enforced and collected in the same manner that other assessments are enforced. All sums paid on the former assessment shall be credited to the property on account of which the same were paid, as of the date of such payment.

In argument, no question was made by the plaintiff respecting the regularity of the first assessment. The contest is waged solely about the reassessment. In the record as presented by the defendants we find that the total cost of the improvement was $96,221. Of this, the original assessment apportioned $13,579 to property described as "right of way," of which the owner was said to be "Heights Trust Company." As already noted, the cost of the improvement of a street must be apportioned and assessed "upon the lots, parts of lots, and parcels of land benefited thereby." In making this apportionment an exception is made under Section 394 of the share to be paid in case of street improvement by railroad or street railway companies by reason of their use of the streets. By Section 95 of the charter it is required that all franchises for use of the streets of Portland shall provide for fair compensation to the city; and Section 100 requires street railways to pave between and for one foot outside of the rails of their tracks laid in the streets. It is not disclosed by the record before us whether or not any franchise was ever granted to and accepted or complied with by any street railway. And whether the Heights Trust Company was such a concern or not, does not appear from the data at hand. There is, therefore, nothing coming within the exception from the cost, of "the share to be paid * * by street railway companies for the use of the streets." With this exception laid out of the case, as it must be, for there is nothing in the record upon which it can be based, the only objections to assessments under the charter are to be made by the owners of "lots, parts of lots, and parcels of land benefited thereby." A "right of way," wher-

99 Or.—32

ever the same may be situated, within or outside of a street, is not a lot or parcel of land. It is nothing more than an easement. The design of the charter was to levy the assessment upon the realty itself, and not upon a subordinate easement. Consequently, in asserting a right of way an error was committed, whereby the property benefited by the improvement would escape its just proportion of the expense. The council was therefore justified in acting upon its doubt as to the validity of the assessment and reassessing, unless there be some valid objection to it, apparent on inspection of the return.

3. The contention was made in argument that if the city council had been petitioned by property owners to grant leave to pay the assessment in ten installments with interest, a contract between them and the city was established, the obligation of which would be violated by a reassessment which in its apportionment of the costs thereof would increase the burden imposed upon the property. It becomes necessary, therefore, to examine the record for the purpose of ascertaining whether or not this objection appears therein to have been made by or on behalf of any property owner. It is not questioned that the preliminary apportionment of the reassessment was made by the auditor and that proper notice thereof was given. It seems to have been sufficient to call forth certain writings which appear in the return. One is a letter dated "Portland, Oregon, February 21, 1916," addressed to the auditor of the city, reading thus:

"Some days ago we received from you a notice of preliminary reassessment for the improvement of Kingston Avenue et al. streets, such notice states

that any objection must be filed with your office within ten days from the 15th day of February.

"We beg to advise you that on behalf of the owners of several hundred lots in Arlington Heights, that at this time we object to the reassessment being made to this street as a whole, inasmuch as this property was sold with the understanding and agreement that the assessments against the several lots would not exceed a specific amount. There was published on June 1, 1914, a price list which set out the release amount in one column and the bonded indebtedness in another. That was the reason it was impossilble for the Malinda Heights Realty Syndicate to take any action on account of a letter written on August 25th by the city attorney, W. P. La Roche, regarding a petition and · waiver which was filed with the city auditor on May 27, 1914, and on behalf of the owners I am protesting against this reassessment and contend that the assessment should only be made on lots belonging to the Syndicate and not on lots that were sold or contracted on the representation of the price list of June 1, 1914, enclosed herewith.

"I beg to submit you a memorandum of unsold lots on which the Syndicate would like this assessment placed in order not to disturb the several purchases which were made, as we have said before, based on the representation that the bonded indebtedness against the several pieces were as set out on the sheet enclosed herewith, and became a part of our contract with the purchaser. [Then follows a list of many lots.]

"The Syndicate has, you will see, plenty of property left to take care of this additional assessment without embarrassment either to the Syndicate or without in any way jeopardizing the interests of the city, but to make it a blanket proposition covering the whole tract, which you will note has been largely sold, would not only be embarrassing to us but might lead to litigation which would be expensive and the ultimate results might be in doubt.

"Attached hereto is a formal protest covering the lots already deeded.

"Yours truly,

"Malinda Heights Realty Syndicate.

"By C. H. Jackson,

"President-Manager."

Attached thereto is a printed price list dated June 1, 1914, stated therein to be "subject to change without notice." It is headed "Arlington Heights." The first item will be sufficient as indicative of the whole, reading thus:

|  | "Price | Release Amt. | Bonded |
|---|---|---|---|
| "Block 1, Lot 1 | 1750.00 | 715.65 | 168.08." |

Attached to the letter of the syndicate as quoted, are 47 other letters, all addressed to "Mr. C. H. Jackson, Manager, Malinda Heights Realty Syndicate, 509 Lumbermen's Building, Portland, Oregon," all exactly alike except as to the description of the property involved. Some of these are signed by some of the plaintiffs, and others by strangers to the record. In each case the writer recites that he is the owner of certain described property in Arlington Heights, Multnomah County, Oregon, and the letter then goes on to state as follows:

"There is now being published in the Daily Official Abstract, a newspaper in Portland, Oregon, what is entitled 'Notice of Preliminary Re-Assessment for the improvement of Kingston Avenue, et al. streets.' The first publication was made on February 4, 1916, and the last will be published on February 15, 1916. This publication is signed A. L. Barbur, Auditor of the city of Portland.

"As I understand it, this plan would create a lien upon the property I have above mentioned. I do not believe that this is fair to me. At the time I purchased this property there was furnished me by Malinda Heights Realty Syndicate, a memorandum of the amount of public charges against this property,

and this was later confirmed by a certificate of title furnished by the Title & Trust Company, and the lien they are now about to create was unbeknown to me. I believe that the lien referred to should be placed against the lots now owned by the Malinda Heights Realty Syndicate, and you are hereby authorized to represent me at any meeting of any kind to bring about the arrangement I have suggested.

"I further understand that this is an old matter and I believe I should have been advised of it. You are president and manager of Malinda Heights Realty Syndicate and I think I have a right to ask you to bring about the proposition I have hereinabove set out.

"Kindly keep me advised as to what you are doing, and oblige."

(Signature.)

We find in the record another letter, dated "Portland, Oregon, February 21, 1916," addressed to the mayor and council of Portland, signed by Etta Osborn Bailey, inclosing notice of reassessment for the improvement of Kingston Avenue and other streets, to which she objects, without giving further reason than that she had purchased the lot in September, 1914, and had paid in full for the same, all sewer and other indebtedness on the same and for the improvements to date, and that she considers the reassessment an injustice. Mrs. Delia Hodler addressed a letter to the city auditor, saying in substance that "in connection with the proposed reassessment" she wished to object thereto, and desired an opportunity to be heard on the first of March, 1916. The Bailey and Hodler letters may be laid out of the case, because the writers are not parties to this proceeding on review. Moreover, neither of them gives any reason for objecting, and on that account is insufficient.

4. The only other objection addressed to any of the city authorities is the letter of Malinda Heights Realty Syndicate by C. H. Jackson, already quoted. If this communication be taken as an objection, it is not specific enough to challenge the jurisdiction of the council to levy a reassessment. It does not state that the bonded indebtedness, so called, arose from the application of any property owner for permission to pay in installments, according to the procedure embodied in what is called the Bancroft Act. For aught that appears, the bonded indebtedness may have been that of the syndicate itself. Color is lent to this hypothesis by what appears in some of the correspondence with that concern, shown in the return, where allusion is made to a prospective effort on its part to float bonds with which to raise money to discharge the item of $13,570 already mentioned, apportioned to the right of way of the Heights Trust Company, for which last-named company it seems the syndicate was responsible. Moreover, the letter does not contain a statement that there was any actual bonded indebtedness by which the syndicate was affected, but merely that in making sales of the lots the syndicate had represented that there was bonded indebtedness. The right to make a reassessment is not challenged, but the effort of the letter seems to be to prevail upon the city to confine the assessment exclusively to the property of the syndicate and so to protect it against its purchasers on the representations it had made in its advertising matter. The fact that the syndicate was willing to have the whole reassessment imposed on its own property or that, as between it and the buyers of its lots, it ought to pay it, is no ground for objection on their behalf against reassessment, especially as they did not direct their

opposition to the city authorities. Their protest to the syndicate is not an objection to the council. They did not challenge the liability of their lots to reassessment, but only demanded of the syndicate that it should take care of it. Substantially, the situation is that the syndicate complained to the officials that it had got itself into trouble with its purchasers on account of advertising representations it had made to them, and wanted the city to extricate it from the consequent embarrassment.

Further, a strict search throughout the return fails to disclose that there was at any time any application on behalf of any of the parties to this proceeding in review, for permission to pay by installments the original assessment levied on the property. In brief, in the return there is no trace of any operation under the Bancroft Act; in the absence of which there did not arise any contract, the obligation of which would be impaired by a reassessment. Neither the letter of the syndicate itself addressed to the city auditor, nor the stereotyped protests addressed to the syndicate by the plaintiff Fay and others, state any facts whatever amounting to a specific remonstrance against the reassessment. As a matter of law, therefore, they are insufficient to constitute a valid objection to the proposed action of the council. The question argued at the hearing, about impairing the obligation of a contract supposed to arise from operations under the Bancroft Act, is not presented by the record before us.

5. It is contended also that the city council never passed upon these objections, and made no decision about them. This contention is not supported by the record. We find in the minutes of the regular meeting of the council held on March 1, 1916, the date mentioned

in the notices for the hearing of objections, the statement that the remonstrances of Etta O. Bailey, Mrs. Delia Hodler, and Malinda Heights Realty Syndicate were presented and read, and by unanimous consent Mr. C. H. Jackson, representing the Malinda Heights Realty Syndicate, was extended the privilege of the floor, and the time for considering the matter was by unanimous consent extended to March 10, 1916. On the latter date the matter of considering the preliminary reassessment came up. The same was read and by unanimous consent the time was again extended until March 15th. The same action was taken concerning an ordinance making the reassessment. On March 15th, the ordinance making the reassessment, and the objections thereto were taken up for consideration, and the city attorney's report was read. By unanimous consent "said papers" were referred to the commissioner of finance, and the time for determining said matter was continued to March 29, 1916. The same was thereafter continued to April 5th. The commissioner of finance reported upon the ordinance and after some recital recommended that the petition asking that the assessment be placed on certain lots only, be denied, and further recommended that all remonstrances be overruled and that the ordinance be passed.

We find the following in the minutes of April 5, 1916, after the entry of this report:

"By unanimous consent the council considered the remonstrances, remonstrators having been called for (under order of business 'Matters Continued'), and no one appearing, the council found that the apportionment of the reassessment is equitable and just, and the facts stated in the remonstrances, so far as the same apply thereto, are not true.

"By unanimous consent the report of the commissioner was adopted, said petition denied, all remonstrances overruled and said ordinance recommended for passage."

The ordinance was passed. This clearly indicates that the owners of property had their opportunity to be heard. They did not present objections which were sufficient as a matter of law to challenge the jurisdiction of the council to make the reassessment. Moreover, the council found that the statement of facts was not true.' That has been held sufficient as a finding of fact as well as of law, in the opinion of Mr. Justice BEAN in *Irelan* v. *Portland,* 91 Or. 471 (179 Pac. 286).

6. The amount of the total assessment as legitimately computed was not increased. The error which the council sought to correct consisted in apportioning $13,579 to a species of property not taxable for street improvement, namely, a right of way, which is not in any sense a lot or parcel of land. The record discloses that the improvement was made on petition of the owners of property in Arlington Heights, an addition to the City of Portland, presumably for the purpose of exploiting sales in that district, and that the petitioners were so anxious to secure the improvement that they waived all competition for price and procured the letting of the contract to a contractor of their own choice. No complaint is intimated that the work was not done according to contract or that the cost was excessive or illegal. The property has enjoyed the benefit of the improvement. It does not appear in the record that any owner petitioned for leave to pay in installments under the Bancroft Act or under the city legislation on the same subject. The record does not show that the council went beyond or

exceeded its jurisdiction in any of the matters under consideration. The city is entitled to pursue the property benefited, until the full legitimate expense of the improvement is realized: *Ukase Investment Co.* v. *Portland,* 95 Or. 176, 179 (186 Pac. 558), and authorities there cited.

The record discloses that the contentions of the petitioners for the writ are without merit and that the judgment should be reversed and the writ dismissed.

It is so ordered. REVERSED. SUIT DISMISSED.

McBRIDE, BENSON and HARRIS, JJ., concur.