[No. 6373. Decided October 30, 1906.]

W. G. HELLAR et al., *Respondents*, v. THE CITY OF TACOMA, *Appellant.*[1]

MUNICIPAL CORPORATIONS—CONTRACT FOR LOCAL IMPROVEMENTS— TIME OF PERFORMANCE—VALIDITY. Under a city charter and contract for improving a street, providing for a demurrage of $25 per day if the work is not completed within one hundred and twenty days after execution of the contract, and that the work shall be completed within one hundred and sixty days, and the contract void and all pay forfeited for failure "on the part of the contractor" to complete the same within such time, the contract is not avoided by failure of the contractor to complete the work within such time, where he delayed the work for some months after it was nearly completed, at

[1]Reported in 87 Pac. 130.

the direction of the commissioner, and for the benefit of the city, the work being required to be done under the direction and to the satisfaction of the commissioner; since the delay was not due to the "failure of the contractor."

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered April 16, 1906, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to annul a local improvement assessment. Reversed.

*C. M. Riddell, R. E. Evans,* and *J. A. Quick,* for appellant, to the point that a substantial compliance with the contract is sufficient, cited: *McCartan v. Trenton,* 57 N. J. E. 571, 41 Atl. 830; *Lake Erie etc. R. Co. v. Walters,* 13 Ind. 275, 41 N. E. 465; *Elma v. Carney,* 9 Wash. 466, 37 Pac. 707; *Mayor etc. of Baltimore v. Raymo,* 68 Md. 569, 13 Atl. 383; *State ex rel. Barber Asphalt Paving Co. v. McCardy,* 87 Minn. 88, 91 N. W. 263; Elliott, Roads and Streets (2d ed.), § 414; *Wheless v. St. Louis,* 90 Mo. App. 106; *Neosho City Water Co. v. Neosho,* 136 Mo. 498, 38 S. W. 89; *Levi v. Coyne,* 22 Ky. Law 492, 57 S. W. 790; *Whitfield v. Hipple,* 11 Ky. Law 386, 12 S. W. 150. The acceptance of the work by the city engineer, and the approval by the city council, was conclusive upon the property holders in the absence of fraud or palpable mistake. *Haley v. Alton,* 152 Ill. 113, 38 N. E. 750; 2 Cooley, Taxation, pp. 1280, 1281; *Fitzgerald v. Walker,* 55 Ark. 148, 17 S. W. 702; *Whitefield v. Hipple* and *Wheless v. St. Louis, supra; Dixon v. Detroit,* 86 Mich. 516, 49 N. W. 628; *McCoy v. Able,* 131 Ind. 417, 30 N. E. 528, 51 N. E. 453; *Omaha v. Hammond,* 94 U. S. 98, 24 L. Ed. 70; *Elma v. Carney, supra; Berry v. Tacoma,* 12 Wash. 3, 40 Pac. 414; *White v. Tacoma,* 20 Wash. 361, 55 Pac. 319; *Motz v. Detroit,* 18 Mich. 494, 515; Cooley, Taxation (3d ed.), pp. 671, 672; Elliott, Roads and Streets (2d ed.), §§ 442, 443; *Wyckoff v. Meyers,* 44 N. Y. 143; *Lake Erie etc. R. Co. v. Walters,* 13 Ind. App. 275, 41 N. E. 465; 15 Am. & Eng. Ency. Law

(2d ed.), § 1046; *Seattle Transfer Co. v. Seattle*, 27 Wash.
520, 68 Pac. 90; *Young v. Tacoma*, 31 Wash. 153, 71 Pac.
742; 1 Dillon, Municipal Corporations (4th ed), §§ 94, 95;
*In re O'Brien*, 119 Mich. 540, 79 N. W. 1070. The act of
1905, Laws 1905, p. 281, makes the confirmation of the assess-
ment roll by the city council final "unless it shall be made to
appear that the city authorities did not act in good faith and
did not attempt to act fairly in regard thereto." *Olympia
Water Works v. Thurston County*, 14 Wash. 268, 44 Pac.
267. Even when the right of review on appeal is a constitu-
tional right, the limitations thereof are necessarily fixed by
legislative enactment. Elliott, Appellate Procedure, §§ 76-78;
*Bickerdike v. Chicago*, 185 Ill. 280, 56 N. E. 1096; *McClain
v. Williams*, 10 S. D. 332, 73 N. W. 72, 43 L. R. A. 287;
*Sullivan v. Haug*, 82 Mich. 548, 46 N. W. 795, 10 L. R. A.
263; *McCoy v. Able, supra*. The act of 1905 limiting the
right of review is valid. Cooley, Constitutional Limitations
(4th ed.), 371; 8 Cyc. of Law & Procedure, 1024, 1025;
Freeman, Void Judicial Sales, p. 138, § 62; *Donley v. Pitts-
burg*, 147 Pa. St. 348, 23 Atl. 394; *Richman v. Supervisors*,
77 Iowa 513, 42 N. W. 422, 14 Am. St. 308, 4 L. R. A. 445;
Elliott, Roads and Streets (2d ed.), §§ 423-424; *Hutcheson
v. Storrie*, 92 Tex. 685, 48 S. W. 785; *Frederick v. Seattle*,
13 Wash. 428, 43 Pac. 364.

T. L. *Stiles*, for respondents, contended, *inter alia*, that
time being made the essence of the contract, there was no au-
thority to extend the time of performance thereof. *Beveridge
v. Livingstone*, 54 Cal. 54; *Turney v. Dougherty*, 53 Cal.
619; *Mahoney v. Braverman*, 54 Cal. 565; *Fanning v. Scham-
mel*, 68 Cal. 428, 9 Pac. 427; *Dougherty v. Coffin*, 69 Cal.
454, 10 Pac. 672; *Raisch v. San Francisco*, 80 Cal. 1, 22
Pac. 22; *Brock v. Luning*, 89 Cal. 316, 26 Pac. 972; *Heft
v. Payne*, 97 Cal. 108, 31 Pac. 844; *Palmer v. Burnham*, 120
Cal. 364, 52 Pac. 664; *Kelso v. Cale*, 121 Cal. 121, 53 Pac.
353. Where time is made of the essence of the contract, a

failure to complete the work within the time limited is fatal
to assessments levied to pay for work done.    *Rose v. Tres-
trail*, 62 Mo. App. 352; *McQuiddy v. Brannock*, 70 Mo. App.
535; *New England Safe Dep. & Trust Co. v. James*, 77 Mo.
App. 616; *Springfield v. Davis*, 80 Mo. App. 574; *Whittmore
v. Sills*, 76 Mo. App. 248; *Shoenberg v. Heyer*, 91 Mo. App.
389; *Winfrey v. Linger*, 89 Mo. App. 159; *Neill v. Gates*,
152 Mo. 585, 54 S. W. 460; *Barber Asphalt Paving Co. v.
Ridge*, 169 Mo. 376, 68 S. W. 1043; *Childers v. Holmes*, 95
Mo. App. 154, 68 S. W. 1046; *Smith v. Westport*, 105 Mo.
App. 221, 79 S. W. 725; *Spalding v. Forsee*, 109 Mo. App.
675, 83 S. W. 540; *Barber Asphalt Paving Co. v. Munn*, 185
Mo. 552, 83 S. W. 1062; *Schibel v. Merrill*, 185 Mo. 534, 83
S. W. 1069; *Wickwire v. Elkhart*, 144 Ind. 305, 43 N. E.
216.

MOUNT, C. J.—This appeal is from an order of the super-
ior court of Pierce county, adjudging a contract between the
city of Tacoma and the Barber Asphalt Paving Company
void, and for that reason annulling an assessment made by
the city to pay for certain street improvements made under
the contract.   The city appeals.

The facts are that the city of Tacoma, in the year 1905,
passed a resolution and ordinance, providing for the paving
of certain streets and alleys in said city, designating the dis-
trict as "improvement district No. 252."   These improve-
ments were ordered to be made at the expense of the prop-
erty specially benefited thereby, payment to be made to the
contractors in bonds which were to mature annually for a
period of years.   The commissioner of public works was di-
rected to prepare plans and specifications and make estimates
of the cost of the improvements, and to call for bids for the
work.   This was done, and upon public advertisement a con-
tract was let to the Barber Asphalt Paving Company, and
duly signed on March 29, 1905.   By the terms of this con-
tract and the specifications which were made a part thereof,

the work was to be completed within one hundred and sixty days after the execution of the contract, which provided:

"If said improvements be not completed within one hundred and twenty days after the execution of this contract, a demurrage will be charged as hereinafter set forth, but due allowance will be made for such days that rain prevents the execution of this work in a proper manner. The commissioner of public works shall decide the number of days to be allowed. Said time, however, shall not extend beyond the one hundred and sixty day limit."

The demurrage provided for was $25 per day after one hundred and twenty days. The contract also provided that the work should be done under the supervision and to the satisfaction of the commissioner of public works. The paving company, after making the contract, entered upon the work, and continued to perform the same until about the 13th day of July, 1905, when the paving company was directed by authority of the commissioner of public works to cease work until other pavement which was being done in other districts adjoining district No. 252 could be brought up and fitted and connected to this work. In obedience to this request, the paving company ceased work on this contract until about September 14, 1905. The one hundred and sixty-day limit expired on September 5, 1905. On the next day these respondents served written notice on the commissioner of public works that the time limit for the completion of the contract had expired, and demanded that he permit no further work by the paving company upon said contract, and that the commissioner of public works proceed to let a contract for the completion of the work. The commissioner of public works paid no attention to this notice, but permitted the paving company to finish the work on or about the 14th and 15th days of September, and thereafter accepted the completed work.

Subsequently an assessment roll was prepared, assessing the property of respondents and others specially benefited, for the payment of the cost of the improvement, viz., $105,-

450. The respondents, representing property in the district assessed for about $41,000, appeared before the city council and objected to the assessment upon several grounds. All the objections were heard and considered by the city council and rejected. Respondents thereupon appealed to the superior court of Pierce county, but upon such appeal waived all of their objections except two, which are substantially as follows: That the charter provisions as to the time within which work must be done are mandatory and binding on all the parties, and the work not having been done within one hundred and sixty days, the contract is void; that the demurrage of $25 per day must be enforced against the contractor after one hundred and twenty days, even if the work was completed within the one hundred and sixty-day limit.

Upon trial to the court without a jury, the court found that the contract had not been completed within one hundred and sixty days as therein provided, and was therefore void; and concluded that the city of Tacoma had no power to levy an assessment for work done under the contract, and entered a judgment annulling the assessment in so far as the same affects the respondents' property.

The question in this case is, did the commissioner of public works have authority for any reason to stop the work under the contract, and thereby extend the time when the work should be finally completed? Respondents contend that he had no such authority. Appellant, while contending for the affirmative of the question, also insists that the work was substantially completed when it was stopped by the commissioner of public works; the facts in this respect being that the whole contract contained about forty thousand square yards of paving which had all been done except about eight hundred and thirty-six square yards, or, as is claimed by the respondents, about one thousand four hundred and sixty-four square yards, which uncompleted work was at several street intersections. It was claimed that these intersections could

not be completed so as to make a good job until other work should be done on the intersecting streets, and that it was for the benefit of the city that the work was stopped in its incomplete state.

Under the view we take of the main question in the case, it will not be necessary to decide or to discuss the question of substantial performance. The city charter of Tacoma provides at § 160, that all public work authorized by the city council shall be done by contract under the supervision of the commissioner of public works; but before awarding any contract, the commissioner of public works shall cause notice to be given inviting sealed proposals therefor. Section 164 provides that the notice shall contain a general description of the work to be done, the materials or supplies to be furnished, and the time within which the work is to be commenced and when to be completed, and shall refer to the plans and specifications on file in the office of the commissioner of public works for full details of the work. Section 165 provides that all contracts shall be drawn under the supervision of the city attorney and shall have attached thereto detailed specifications of the work to be done, which shall be referred to and made part of the contract; that every contract entered into by the commissioner of public works shall be signed by him and by the other contracting party, and that,

" . . . the contract for work shall specify the time within which the work shall be commenced and when to be completed as was specified in the notice inviting proposals therefor. In case of failure on the part of the contractor to complete his contract within the time fixed, his contract shall be void, and the city shall not pay or allow him any compensation for work done by him under said contract.

"Sec. 166. If the contractor does not complete his work within the time limited therein, said *commissioner of public works* may reject the unfinished portion of said work after pursuing the formalities hereinbefore prescribed for the letting of the whole.

"Sec. 167. The work in this article provided for must be done under the direction and to the satisfaction of the said *commissioner of public works,* and all materials and supplies furnished must be in accordance with the specifications and to *his* satisfaction. When any contract shall have been completed and accepted by *him,* he shall so declare, and thereupon *he* shall deliver to the contractor a certificate to that effect."

The contract entered into by the Barber Asphalt Paving Company and the commissioner of public works substantially followed the provisions of the charter above set out. The language of the contract in this respect is as follows:

"Said contractor agrees to construct and complete said improvement in accordance with the plans and specifications heretofore prepared by the city engineer of said city, and in pursuance of the terms of a resolution adopted by the city council of the city of Tacoma, on the 25th day of January, 1905, ordering said improvement to be made, and ordinance No. 2321 of the city of Tacoma, and in strict accordance with and conforming to the drawings, plans and specifications for said improvement filed in the office of the commissioner of public works of the city of Tacoma on the 27th day of January, 1905, a copy of which said plans and specifications are hereto attached, marked Exhibit "A," and made a part of this agreement. The work hereby contracted for shall be commenced within ten days after the signing and execution of this contract, and the whole of said materials and supplies shall be furnished and said work completed within one hundred and sixty days after the execution of this contract; but if said improvement be not completed within one hundred and twenty days after the execution of this contract, a demurrage will be charged, as hereinafter set forth, but due allowance will be made for such days that rain prevents the execution of this work in a proper manner. The commissioner of public works shall decide the number of days to be allowed; said time, however, shall not extend beyond the 160-day limit. In case the contractor fails to complete the work within one hundred and twenty days after the execution of the contract, he shall pay to the city of Tacoma, as pen-

alty for damages caused by such delay the sum of $25 per day for each and every day that shall elapse after the said one hundred and twenty days until said work is completed; provided, that in no event shall the final time for the completion of said work extend beyond one hundred and sixty days after the execution of said contract, and if said work be not completed and said contract finished and complied with on or before the said final limit of one hundred and sixty days after the signing and execution of this contract, then, and in that event, said contract shall be void, as provided by § 165 of the city charter, and all rights and claims under the provisions of this contract forfeited by the said contractor, and in that event the said contractor shall not be allowed or paid any compensation; provided, however, that if the contractor be delayed by the city council or officials in the beginning of this work, or in any case any allowance for rainy weather be made in writing by the commissioner of public works, then the time of such suspension or delay shall be added to the said one hundred and twenty-day limit above-mentioned, but in no event shall said suspension or delay extend the time for the completion of the work under this contract beyond the said limit of one hundred and sixty days, above-mentioned, for the final completion of the work."

It is claimed that these provisions of the city charter and contract are mandatory. We may readily concede that they are so, and that they control both the contractor and the city officials in regard to the work which is to be performed under the provisions thereof. But, in order to arrive at a correct understanding of their scope and meaning, we must consider the object for which they were enacted as well as the language used. The provisions that the contract shall specify the time within which the work shall be completed and that the failure of the contractor to complete the work in the time fixed shall render the contract void, were clearly for the benefit of the city, and were intended to prevent unnecessary delays and failure on the part of the contractor to diligently prosecute the work. · They were not intended to guard against delays caused by the city or the commissioner of public works and

thereby become a trap for the contractor. The charter does not prescribe any fixed time within which work shall be done. That is left to the commissioner of public works, who fixes the time when he prepares the plans and specifications. This time limit fixed by the commissioner of public works is required to be put into the contract which is signed by him and the contractor, and, in case of failure *on the part of the contractor* to complete his contract within the time fixed, the contract shall be void. The charter also provides that the contractor shall perform his work under the direction and to the satisfaction of the commissioner of public works. These provisions do not mean that, where the failure is entirely on account of the city or the commissioner of public works, the contract and work done thereunder shall be forfeited. Such construction would not be placed upon the charter or upon the contract unless the language used clearly and unequivocally so states. It does not do so. It refers entirely to the *failure of the contractor.* The power to fix the time for completion of the work rests with the commissioner of public works. He fixes the time which seems to him adequate, and invites bids accordingly. Bids are made on that basis by persons who are willing to enter into a contract to complete the work under the direction and to the satisfaction of the commissioner of public works within the time fixed, and provides that a failure *on the part of the contractor* to complete the work within the time fixed shall avoid the contract, but neither the charter nor the contract provides that the contract shall be void on account of any acts of omission or commission of the commissioner of public works.

In this case it is shown without dispute that the work was nearly completed well within the time, and that the contractor could have performed his work within the one hundred and twenty days, and that he would have done so but for the request of the commissioner of public works that the work cease until certain other work in other districts was done;

that the commissioner of public works stopped the work for the benefit of the city, in order that the work might be finished better a little later than it could be done at that time. The good faith of city officials in charge of the work is not attacked. Under these circumstances, we see no good reason for holding the contract void.

Counsel for respondents cites a number of cases where the contract was extended after the time limit had expired, and after the contract had become void, and it was there held that the contracts became void at the expiration of the time limit, and that there was no power to revive a void contract after that time. Those cases were clearly right. If the contractor in this case, without the direction of the commissioner of public works or in violation of his orders, had permitted the one hundred and sixty-day limit to expire, his contract no doubt would in that case have become void according to the express terms of the charter and the contract, and no power is vested either in the city or in the commissioner of public works to revive the same, and the authorities cited would in such cases be in point. But, because the contractor obeyed the direction of the commissioner of public works, as he was obliged to do, while his contract was yet in force and still alive, this case is not controlled by the cases cited. We are of the opinion that the commissioner of public works was authorized to stop the work at any time before the expiration of the limit, in good faith for the benefit of the city, and that such time lost without the fault of the contractor should not be considered to avoid the contract. For this reason the lower court erred in holding the contract void, and in annulling the assessment roll.

The judgment of the trial court is reversed, and the cause remanded with directions to the lower court to dismiss the appeal of the city council and to affirm the assessment roll.

RUDKIN, DUNBAR, CROW, ROOT, FULLERTON, and HADLEY. JJ., concur.