Argued February 25, modified March 18, 1919.

## IRELAN *v.* PORTLAND.

### (179 Pac. 286.)

**Municipal Corporations—Public Improvements—Contracts—Delay in Performance.**

1. Where a contract for street paving provided that the improvement should be completed by a specified date, the contract did not expire, notwithstanding the improvement was not completed in time, where the delay was caused by the action of the city in refusing to permit it before the installation of other improvements, and extensions had been allowed by the council; the contract containing no provision for automatic forfeiture.

**Municipal Corporations—Public Improvement—Acceptance.**

2. Where the completion of a public improvement was delayed by the action of the city itself, and time for performance extended by the council, the city executive board did not lose jurisdiction to accept the improvement merely because it was not completed at the time appointed in the contract.

**Municipal Corporations—Public Improvements—Assessments—Cost of Advertising, Engineering and Superintendence.**

3. Under a city charter, providing that a sum not exceeding 5 per cent of the contract price of a public improvement shall be deemed part of the cost as representing advertising, engineering and superintendence, the actual cost of such work may be taxed, although performed by city officers who were paid a regular salary.

**Municipal Corporations—Public Improvements—Cost of Advertising, Engineering and Superintendence.**

4. Under a city charter, allowing a sum not to exceed 5 per cent of the contract price for a public improvement, to be taxed as the cost of advertising, engineering and superintendence, the city could not add a straight 5 per cent for such items, but was limited to the amount that had actually been expended.

Municipal Corporations—Public Improvements—Assessment of Benefits—Necessity of Hearing.

5. Where a city charter gives property owners, affected by public improvements, the right to make objection to the apportionment of the assessment, a hearing or an opportunity to be heard is absolutely essential to the validity of the assessment.

Municipal Corporations—Public Improvements—Assessment—Hearing.

6. Where a city charter provides that property owners may object in writing to an apportionment of assessments for public improvements, property owners who have made written objection are not deprived of a hearing, where they have not offered to submit further statements or proof in support of their objection, although accorded an opportunity to do so.

Municipal Corporations—Public Improvements—Record of Proceedings—Determination of Objections—Findings.

7. The records of the proceedings of a municipal council or the ordinance for assessment for public improvements should disclose that the council determined issues raised by the objections by the property owners to the preliminary assessment, and it is sufficient if so shown by the minutes of the council.

Municipal Corporations — Public Improvements—Assessments—Findings as to Objections.

8. On objections to an assessment, a finding by the council that the apportionment was equitable and just, and that facts stated by objecting property owners were not true, was sufficient; technical precision not being required.

[As to right of contractor, who has failed to comply with the statute, to remove from the municipality the value of the public improvements, see note in Ann. Cas. 1912D, 419.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is a suit to cancel a street assessment charged against certain lots of plaintiffs for the improvement of Milwaukie Street from Holgate Street to Nehalem Avenue. From a decree in favor of defendants, dismissing the suit, plaintiffs appeal. A former suit by other property owners with reference to the same improvement was passed upon by this court in the case of *Sherrett* v. *City of Portland*, 75 Or. 449 (147 Pac. 382). The improvement consisted of paving Milwaukie Street with Hassam pavement for a distance of about two miles. It was inaugurated in April, 1911, by the

adoption of a resolution of intention by the city council. Afterwards a time and manner ordinance was passed. The council let the work to the Consolidated Contract Company for $1.75 per square yard of pavement. On June 16th of that year, the executive board, by a resolution duly adopted, fixed the time for the completion of the improvement at four months. The contract was executed on July 1st and required the completion of the work by November 1, 1911.

The contractor did not begin work on the improvement during 1911. After November 1st, the property owners petitioned the council to declare the proceedings at an end, and proceed to relet the work, giving as reasons that the prices of paving had fallen approximately 25 per cent, and that the Ellis amendment to the charter of Portland, which became effective on July 1, 1911, and after the contract had been let, required competition. The city authorities refused to interfere with the contractor. Afterward on March 15, 1912, the executive board granted the contractor an extension of time to July 1, 1912. Before the expiration of this time, the contractor commenced the work. About November 5th, the contractor filed an application for an extension of time to November 15, 1912. This was allowed by the executive board. Afterward, the contractor asked for an extension to April 30, 1913, which was allowed. The work was completed in April, 1913. Subsequently the engineer certified the contract cost to the auditor as $130,812.20. To this amount as certified, the auditor's office added $6,537.11, under a charter provision which is that "a sum not to exceed 5 per cent of the contract price as the cost of engineering, advertising and superintendence" shall be deemed a part of the cost of each improvement. No attempt was made by the city officials to ascertain what the actual cost of

these items of engineering, advertising and superintendence was. The engineering was done by regular officers of the city, employed and paid monthly salaries. This was in accordance with the custom of the city officials for several years past to add 5 per cent of the cost of improvement for engineering. This amount for engineering, plaintiffs assert was paid into the general fund and the cost and expenses in the way of salaries of the officials performing the work were paid out of the general fund.

After the work was accepted by the city officials and the final estimate was prepared by the city engineer and filed in the office of the city auditor, notice was given by the auditor, pursuant to Section 394 of the City Charter, to the effect that the auditor had ascertained what he deemed a just apportionment of the cost of the street improvement; that the cost had been apportioned, and a proposed assessment thereof was on file in the office of the auditor and subject to examination, and further that any objection to such apportionment that might be made in writing to the council and filed with the auditor within ten days from the first publication of the notice "would be heard and determined by the council before the passage of any ordinance assessing the cost of said improvement." Within the time allowed the plaintiff E. E. Chapman filed with the auditor of the City of Portland objections in writing to the proposed apportionment of the assessment for the reasons that the contract was not legally let; that the prices were excessive and the cost of the improvement was largely in excess of the benefits to each lot; that the lots of the plaintiff were assessed for catch-basins or inlets in front of other property, although such lots were assessed for all the catch-basins that were necessary and which were put in front of

these lots when the sewer was put in. That within the same time, plaintiff A. B. Irelan, also filed objections in writing to the assessment and apportionment for similar reasons. The objections of the property owners together with the ordinance declaring the cost of the improvement were referred to the committee on streets. On May 14, 1913, this committee reported to the council in regard thereto as follows:

"That the objectors were called for but no one appeared in support of said objections. Your committee then carefully considered said objections and finds that the apportionment of the assessment for the improvement of said street is equitable and just and that the facts stated in the objections so far as the same apply thereto are not true."

It recommended that said objections be overruled. It appears from the minutes of the council that none of the objectors appeared in support of the objections that:

"The council then considered said objections and found that the apportionment of the assessment for the improvement of said street is equitable and just and that the facts stated in the objections so far as the same apply thereto are not true,"

and adopted the report of the committee and overruled the objections.                                MODIFIED.

For appellants there was a brief and an oral argument by *Mr. Hayward H. Riddell.*

For respondents there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, with an oral argument by *Mr. Latourette.*

BEAN, J.—1. The first contention made by counsel for plaintiffs is that the time stipulated in the contract

for the completion of the work had expired and the work not being finished, the contract ceased to have any validity. The first question is, had the contract expired? It provides that the work shall be performed in accordance with the plans and specifications therefor, and completed by the first day of November, 1911; the contract also provides for damages as provided for in Ordinance No. 19,745 for any delay beyond the first day of November, 1911. This ordinance which was made a part of the contract also provides that:

"The Executive Board may further for unnecessary delay or delinquency on the part of the contractor declare a forfeiture of any such contract, and provide for the completion of the same by the City at the expense of the contractor."

It is alleged on the part of the city that the contract required the work to be done on or before the first day of November, 1911, unless delays were occasioned by certain things in the contract mentioned in which case the contractor should have as many days additional time as were lost by such delays, and unless the executive board should grant an extension of time to the contractor. The matter of the rescission of the contract was referred to the city attorney. That official was informed by the city engineer as follows:

"I notified the contractor that this office would not permit the improvement until the proper underground work was installed, nor would I allow them to tear up the street by grading during the winter season, for the reason that Milwaukie Street is the only road leading to Sellwood, Milwaukie and the southeast district, and the grading of the street during the winter would leave the people south of Holgate Street without means of getting into the city."

The contract contains no provision making time of the essence of the contract, or creating an automatic

forfeiture for a failure to complete the work at the appointed time.   Section 397 of the Charter discloses *inter alia* that:

"No delays, mistakes, errors or irregularities in any act or proceeding in the improvement of a street or the construction of a sewer or drain shall prejudice or invalidate any final assessment, but the same may be remedied by subsequent and amended acts or proceedings."

2. The council refused to rescind the contract and thereafter extended the time for the completion of the work as stated above.   It does not appear that the time for the completion of the work, according to all the stipulations of the contract, had expired when such time was extended.   The city would not be justified in forfeiting the contract when the delays in the execution thereof were by the request of the city official in charge of the work.   It appears that the work was postponed on account of laying water-mains, gas-mains and sewer-pipes, and also by reason of winter weather, and delayed on account of the traffic and also paving between the double street railway tracks, and that thereafter the executive board extended the time for the completion of the work.   It is not shown that the contract was illegal: *Ritchie* v. *City of Topeka,* 91 Kan. 615 (138 Pac. 618); *Hellar* v. *Tacoma,* 44 Wash. 250 (87 Pac. 130); *Washington Paving Co.* v. *Tacoma,* 78 Wash. 282 (138 Pac. 870); *Mayor and City Council of Baltimore* v. *Raymo,* 68 Md. 569 (13 Atl. 383).   After notice to the property owners and an opportunity to be heard thereon, the executive board had jurisdiction to determine whether the contractor substantially performed the obligations of his contract.   The board did not lose jurisdiction to accept the improvement because the same was not completed on the date first appointed in

the contract: *Cormack* v. *Cormack,* 82 Or. 108 (160 Pac. 380); *Lawrence* v. *City of Portland,* 85 Or. 586 (167 Pac. 587).

3. It is suggested by counsel for plaintiffs that the services of the city engineer and his assistants in performing the engineering work pertaining to the street should not be taxed as a part of the cost of the improvement for the reason that these officials were paid regular monthly salaries by the city. The rule that services rendered by municipal officers who are compensated by regular salaries should not be considered as a part of the cost of a municipal improvement was formerly based upon the fact that the law authorizing the improvement did not provide that such incidental expenses should be charged against the property benefited: *Smith* v. *City of Portland,* 25 Or. 297 (35 Pac. 665); *Board of Commissioners* v. *Fullen,* 118 Ind. 158 (20 N. E. 771). By Section 394 of the Charter of Portland, it is specifically enacted that:

"The contract price based upon the estimate of the City Engineer, the costs of rights of way and expenses of condemning land, and a sum not to exceed five per cent of the contract price as the cost of advertising, engineering, and superintendence, shall be deemed to be the cost of every sewer or street improvement."

Under this Section it is proper for the City of Portland to tax a sum not exceeding 5 per cent of the contract price, as the cost of advertising, engineering and superintendence to be paid by the owners of the property benefited, although city officers who were paid a regular salary did the engineering and superintending of the construction: Hamilton on Special Assessments, § 525; *People* v. *City of Kingston,* 39 App. Div. 80 (56 N. Y. Supp. 606); *Burns* v. *Duluth,* 96 Minn. 104 (104 N. W. 714). The actual cost of the engineering

work for the improvement, the plans and specifications and the superintendence of the construction of the pavement are legitimate parts of the cost of the improvement.

4. It is claimed by the plaintiffs that the city officials arbitrarily added 5 per cent of the contract price without regard to the cost of the items mentioned. It is clear that the Charter provides that the actual cost for the engineering, etc., not exceeding the limit named, shall be deemed a part of the cost of the improvement. It appears that a straight 5 per cent of the contract price was added thereto for such incidental expenses, no account of the work having been kept by the city. In *Burns* v. *Duluth,* 96 Minn. 104 (104 N. W. 714), the city levied 10 per cent of the contract price to cover "the expenses of making survey, plans and specifications, and superintendence" of the work. The trial court reduced the amount to actual expenses thereof. This was upheld upon appeal. In the present case testimony as to the actual cost of the work was introduced. Plaintiffs' testimony in regard to the engineering and advertising and the defendants' testimony relating to the superintendence of the work approximate the cost thereof with some degree of accuracy. The Circuit Court made no finding in regard to the same. Considering all the evidence in regard thereto which under the circumstances is necessarily an estimate, it appears to us that the cost of the engineering, superintendence and advertising amounted to the sum of $4,653.11, which sum should be taxed as a part of the cost of the improvement making the contract price $130,812.20 plus the cost of the engineering, etc., $4,653.11, aggregating $135,465.31 as the total cost of the improvement for which plaintiffs should pay their proportionate share.

5. It is next contended by counsel for plaintiffs that the city council failed to "hear and determine" the objections made by plaintiffs to the preliminary assessment. The Charter (Section 394) gives the owners of property which is affected by the proposed assessment, the right to make objections to the apportionment in writing to the city council within ten days from the first publication of notice of such apportionment of assessment, and requires any such objection to be heard and determined by the council pursuant to the notice, before the passage of any ordinance assessing - the cost of the improvement against the property benefited. A hearing or an opportunity to be heard is absolutely essential: *Stuart* v. *Palmer,* 74 N. Y. 183, 185 (30 Am. Rep. 289); *Rogers* v. *Salem,* 61 Or. 321 (122 Pac. 308).

6. After the objections were filed by plaintiffs, considerable time intervened before the council acted upon the report of the committee. It should be remembered notice was given by publication and by mailing to the property owners stating that the proposed assessment had been made and was on file with the auditor subject to examination and objection to the apportionment might be made in writing to the council and filed with the auditor within ten days from the first publication of the notice, and that such objection would be heard and determined by the council before the passage of an ordinance assessing the cost of the improvement. The notice is dated December 28, 1912. A similar notice has been upheld in *Paulson* v. *City of Portland,* 16 Or. 450 (19 Pac. 450, 1 L. R. A. 673; Id., 149 U. S. 30, 37 L. Ed. 637, 13 Sup. Ct. Rep. 750); *King* v. *Portland,* 38 Or. 402 (63 Pac. 2, 55 L. R. A. 812), affirmed in 184 U. S. 61 (46 L. Ed. 431, 22 Sup. Ct. Rep. 290.) On January 8, 1913, the proposed assessment and objec-

tions thereto were placed before the council. The matter was referred to the street committee. No further action was taken until after the restraining order which had been issued in the case of *Sherrett* v. *City of Portland,* 75 Or. 449 (147 Pac. 382), was vacated. Section 394 seems to contemplate that the property owners who wish an oral hearing upon their objections will attend the regular meeting of the council, which is held upon a date fixed by ordinance, and ask for a hearing thereof. It nowhere appears in the record that the property owners offered to submit a further written statement or any oral proof in support of their objections. The principal question of fact raised by the objections related to the assessment for the catchbasins or inlets. It would naturally be supposed that all of the records in regard to the former assessments for the inlets opposite the plaintiffs' property were accessible to the council, and that the street could be examined by the committee, and that the council was sufficiently acquainted with the facts relating thereto without any additional information. It appears that the former inlets in front of the plaintiffs' property were assessed not alone to plaintiffs' land, but to the different parcels of property in the sewer district, hence the auditor deemed it equitable for the plaintiffs to pay their proportional part of the other inlets constructed when the street was paved. It does not appear that plaintiffs were required to pay any more than their just contribution in this respect. They had ample opportunity to be heard further before the council if they had desired such additional hearing.

7, 8. It should appear somewhere in the record of the proceedings of the council or the assessment ordinance that the council determined any issue raised by the objections of the property owners to the preliminary

assessment made by the auditor. If the issue raised be one of law, it is sufficient if the minutes show that it has been overruled. If an issue of fact be so raised there should be a finding of the council thereon, either in the record or ordinance. The finding is not required to be made with the same technical precision required in a decree or judgment of a court. It is sufficient if it shows that the question has in fact been heard and determined by the council and the result of the decision. If an objection involves a question of fact, it cannot be summarily disposed of by a general order overruling it: *Hughes* v. *City of Portland,* 53 Or. 370, 390, (100 Pac. 942). In this instance it appears from the minutes of the council that it was found by that tribunal that the apportionment of the assessment for the improvement of the street was equitable and "that the facts stated in the objections so far as the same apply thereto are not true." This brief statement was in effect a finding in regard to the objections of plaintiffs; that the prices were not excessive and that the cost of the improvement was not in excess of the benefits to each lot; that the lots of plaintiff had not theretofore been assessed for catch-basins or inlets which were put in front of these lots when the sewer was put in, but only for their proportionate share for such inlets in the street, taking them all into consideration. The finding made by the council upon the question of fact raised was sufficient. As to the question in regard to the price of the patented pavement and the letting of the contract therefor, it is only necessary to refer to the case of *Johns* v. *Pendleton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312, Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990), where the matter is fully discussed. The city officials had no authority under the charter to add to the contract price more than the actual cost of the

engineering, advertising and superintendence. In so doing the council exceeded its jurisdiction and to that extent the assessment is void; therefore, a decree will be entered modifying the decree of the lower court, and reducing the total cost of the improvement to $135,465.31, a proportionate part of which should be assessed against plaintiffs' property. The equities of this suit require the parties to pay their own costs.

MODIFIED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.