Argued October 2, reversed and dismissed November 4, 1919.

# GAMMA ALPHA BLDG. ASSN. *v.* EUGENE.

(184 Pac. 973.)

**Municipal Corporations—Assessments Including Engineer's Charges Valid.**

1.   Where an ordinance authorizing the opening of a street authorized engineer's charges to be included as a part of the improvement, engineering expenses could be imposed by assessment, although the engineer was not specially employed for the particular improvement and was paid a regular salary by the city from the general fund.

**Municipal Corporations—Improvement Contract Including Future Repairs Does not Invalidate Assessment.**

2.   A contract for paving, which contained provision "that the pavement shall be free from any defects due to faulty workmanship or materials, and that for a period of five years from its completion the city contractor will at his own expense repair and make good any defects arising from such faulty materials," etc., was not invalid as being a contract for repairs not chargeable to private property.

**Municipal Corporations—Contract for Paving not Unlawful Delegation of Powers to Engineer.**

3.   Where a civil engineer, upon request of city officials, has prepared plans and specifications for contemplated improvement, and the officials enter into a contract for the construction thereof, there is not an unlawful delegation to the engineer of the right to decide what are necessary details; the action of the city officials in entering into the contract making the plans and specifications of the engineer their own.

**Municipal Corporations—Petitioner for Improvement Estopped to Attack Assessment.**

4.   Where an abutting property owner petitions the city council to pave a street, the action of the council in contracting for and making the improvement is conclusive, and the petitioner cannot complain that the cost of the improvement exceeds the benefits.

**Municipal Corporations—Paving Assessment on Property Fronting on Two Streets.**

5.   One owning property on a corner abutting upon one street 90 feet and on another 240 feet cannot maintain that his property does not front upon the street on the long side of his property, and that he is not liable for the burden imposed by paving of such street under a charter providing that each lot or part of lot abutting a street or alley, graded, improved or repaired shall be liable for the full cost of making the same upon the half of the street or alley in front or abutting upon it, but that, when the land adjacent to such street shall not have been laid off into lots or blocks, then the cost of the improving such street shall be assessed

to the owner or owners of such land within 160 feet of such improved street.

**Municipal Corporations—Assessments for Improvements not Objectionable Because Contract Provided for Eight-hour Day.**

6. In view of Laws of 1913, page 11, expressly forbidding a municipality either directly or through a contractor to require more than eight hours per day or forty-eight hours per week from any employee, one assessed for an improvement cannot maintain that city had no right to limit the employment of laborers for more than eight hours per day in its contract for the improvement.

**Easements—Not Interfering with Right of Owner to Use Soil.**

7. The conveyance of an easement in land does not pass the title or interfere with the right of the owner of the soil to occupy it for any purpose not inconsistent with the easement.

**Waters and Watercourses—Right of Owner to Improve Easements Appurtenant to Mill-race.**

8. Where owner of mill-race had an easement in property along the side of the race in that it had the right to widen the same when necessary, abutting owner, who undertakes to improve and occupy the land abutting on the mill-race, is not a trespasser, unless his occupation or improvement is such as interferes with the operations of the owner of the mill-race.

**Municipal Corporations—Retaining Wall Improvements Built on Property Subject to Easement.**

9. A contract of a city for the paving of a street was not invalid by reason of the required construction of a retaining wall at the end of the street abutting upon a mill-race, although the owner of the mill-race had an easement on the property where the retaining wall was built, in that it had a right to widen and deepen its mill-race.

**Municipal Corporations—Departure from Contract for Improvement.**

10. Where a city was authorized to pave a street which ran to the banks of a mill-race, the construction of a retaining wall at the end of the street abutting on the mill-race was not a departure from the purpose of the improvement, although made for the whole width of the street, for the purpose of also supporting a fill for sidewalks that might be constructed.

From Lane: JAMES W. HAMILTON, Judge.

Department 1.

This is a suit to remove a cloud from the title to real estate. It is founded upon the action of the municipal authorities of the City of Eugene in paving that portion of Alder Street in Eugene from its intersection with Eleventh Avenue, north to the mill-race. The

94 Or.—6

plaintiff claims to be the owner of a piece of land with a frontage of 90 feet on Eleventh Avenue, and about 240 feet abutting on Alder Street. The validity of the assessment for such street improvement is attacked by the complaint upon several grounds, which will be specifically mentioned in the opinion of the court. The defendant's answer after denying the allegations of the complaint, sets up several affirmative defenses, the first of which is, that at all the times mentioned in the complaint, the property claimed by the plaintiff was and still is owned by W. E. Brown, as disclosed by the deed records of Lane County. The answer then recites the various proceedings by ordinance and otherwise, of the municipal authorities in making the improvement, the further fact that plaintiff and W. E. Brown had knowledge of all the proceedings and urged the awarding of the contract and the construction of the work according to the plans and specifications, and that after the levying of the assessment therefor, W. E. Brown made application to be allowed to pay such assessment in ten annual installments, under the terms of what is generally known as the Bancroft Bonding Act, and in such application, agreed as follows:

"In consideration thereof, and in pursuance of the provisions of said act aforesaid, I hereby expressly waive all or any irregularity or defect, jurisdictional or otherwise, in the proceedings to improve said street, or lay said sewer, and in the apportionment and assessment of the cost thereof on the property affected thereby."

It is then alleged that because plaintiff permitted and allowed Brown, holding the record title, to manage, control and exercise dominion over the land, in regard to this improvement, the plaintiff should be es-

topped from contesting the validity of the assessment. Any further development of the pleadings which may be necessary to the consideration of the case will be found in the opinion. Upon the trial, there was a decree for the plaintiff, declaring the assessment void and enjoining its collection. Defendant appeals.

REVERSED AND DISMISSED.

For appellant there was a brief and an oral argument by *Mr. O. H. Foster.*

For respondent there was a brief over the names of *Mr. L. M. Travis* and *Mr. A. K. Meck,* with an oral argument by *Mr. Travis.*

BENSON, J.—The plaintiff's attack upon the validity of the assessments is first based upon the fact that it includes a charge of 5 per cent of the contract price of the work for engineering expenses. The initial ordinance in the proceeding contains this clause:

"And there shall be included as a part of said improvement, engineer's charges not to exceed five (5%) per cent of the contract price and when said cost shall be assessed the same shall be a lien upon the property so benefited, etc."

1. It appears from the testimony that the engineer was not specially employed for this particular job, but was a regularly employed and salaried official of the city, whose compensation was not dependent upon the collection of the assessments for this particular improvement. Plaintiff and defendant both cite and rely upon the cases of *Smith* v. *Portland,* 25 Or. 297 (35 Pac. 665), and *Giles* v. *Roseburg,* 82 Or. 67 (160 Pac. 543). In neither of these cases is the compensation of a regular, salaried official involved. In the former, an overseer was specially employed to oversee the construction

.of a sewer, and neither in the charter nor in the ordinance, was there any provision for such a charge, hence it was held that such expense could not properly be charged against the property benefited. In the latter case the engineer did not receive a regular salary, but was paid a stated daily compensation for the services rendered, and received his remuneration in the warrants drawn upon the general fund, and not from funds arising from the assessment for the particular work upon which he was employed. In this case, like the first, there was nothing, either in the charter or the ordinance under which the improvement was made, authorizing such expense to be charged against the property. The latter case, therefore, holds, as did the former, that in the absence of authorization by ordinance, such expense could not be imposed by assessment. In the case at bar, however, the ordinance expressly authorizes it, and it is therefore a valid charge, unless it be excluded by reason of the fact that the engineer receives a regular monthly salary, which we may fairly infer is paid from the general fund. If this were a new question with this court, it might be necessary to consider the authorities in other jurisdictions, but the matter is conclusively settled in the case of *Irelan* v. *City of Portland,* 91 Or. 471 (179 Pac. 286), wherein it is held that such a provision in an ordinance is valid, even where the city official is paid a regular salary.

2. Plaintiff further contends that the assessment was invalid, because the contract for the improvement contains the following clause:

"The contract further agrees that the payment shall be free from any defects due to faulty workmanship or materials and that for a period of five years from its completion, the said contractor will, at his own ex-

pense, repair and make good any defects arising from such faulty materials or workmanship and due to the proper use of such pavement as a roadway.''

It insisted that this is a contract for repairs which should not be charged to private property. This contention is not sustained by the language of the clause quoted and is completely answered in the case of *Allen* v. *Portland,* 35 Or. 420 (58 Pac. 509).

3. The next objection is, that the council exceeded its powers in delegating to the city engineer the right to decide what are necessary details of the improvement, such as inlets, retaining walls, etc. This point is not well taken. The officers of a city employ a civil engineer for the very purpose of relying upon his special training and skill, to advise them as to the necessary details of a contemplated improvement, and when, upon their request, he has prepared plans and specifications for the same, and they enter into a contract for the construction thereof, they thereby adopt and approve them and make them their own.

4. It is then argued that the cost of the improvement exceeds the benefits, and that this invalidates the assessment. The complaint does not charge fraud; the evidence discloses that plaintiff's property abuts upon the pavement for a distance of 240 feet, in addition to which, plaintiff petitioned the city council to make the improvement. Under these circumstances the action of the council in the premises is conclusive: *Colby* v. *City of Medford,* 85 Or. 485 (167 Pac. 487).

5. The next ground of attack upon the assessment is plaintiff's theory that its property does not front upon Alder Street and is therefore not liable to the burden. This theory is based upon the language of the charter, Section 71 of which reads thus:

"Each lot or part of lot abutting a street or alley graded, improved or repaired, shall be liable for the full cost of making the same upon the half of the street or alley in front of and abutting upon it; * * * But when the land adjacent to said street shall not have been laid off into lots and blocks, then the cost of improving such streets shall be assessed to the owner or owners of the land lying within one hundred and sixty feet of such improved street.''

The evidence discloses the plaintiff's land has not been laid off into lots, although it has a frontage of 90 feet on Eleventh Street and about 240 feet on Alder Street, being a corner tract. The contiguous land west of plaintiff's tract is subdivided into lots and blocks. We cannot see how the plaintiff's interpretation of Section 71 can be justified. The property being a corner, at the intersection of two streets is intended, by the statute, to bear its portion of the improvement of both streets, and this would be equally true, if plaintiff's tract extended westerly 160 feet instead of 90. Plaintiff relies upon the case of *Rooney* v. *Toledo,* 9 Ohio C. C. 267, to support its theory. That case differs from the one at bar, in that the statute under which that decision was rendered provided for assessing the property, not by the benefits accruing, but by the front foot, and the court held that upon paving the *side* street, the frontage of the corner lot should be limited to that portion of its length which would equal the length of its end or front on the intersecting street. Here, the statute declares that the burden shall be borne, for one half of the paving by the property in front of and abutting upon it. In *City of Springfield* v. *Green,* 120 Ill. 269 (11 N. E. 261), the ordinance directed that—

The tax shall be "levied, assessed and collected upon and from the real estate, lots, parts of lots, and tracts

of land abutting upon the line of said streets so ordered to be paved in proportion to the frontage thereof upon the streets, or parts of streets, and alleys ordered to be paved, as aforesaid.''

The appellant there contended that since the *side* of his property adjoined the improvement, it was not liable to assessment.  The court, in its opinion, concluded thus:

''The whole of the ordinance considered, we have no doubt that the word [abutting] was intended to apply to lots whose sides as well as ends were bounded by the line of the streets to be improved, and that where the streets in front and at the side were both to be paved, it was the intention of the council that the corner lot should bear one half of the expense of the improvement in front of the side as well as of the end of the lot.  Any other construction of the ordinance would leave no provisions whatever for paying for the pavement of those parts of the streets directed to be improved, which lie in front of the sides of lots located on the line of said streets.''

We can see no escape from the logic of this deduction and hold that in this respect plaintiff's property was properly assessed.

6. It is further urged that the city had no right to limit the employment of laborers for more than eight hours per day, in its contract for the paving.  It is enough to say, that Chapter 1, Laws of 1913, expressly forbids a municipality either directly or through a contractor to require more than eight hours per day, or forty-eight hours per week, from any employee, and inserting such a clause in the contract the defendant was simply obeying a compulsory statute.

7-9.  The serious contention of the parties upon this appeal arises in regard to what plaintiff styles a ''bridge abutment'' and which is termed by the defend-

ant a "retaining wall." The evidence quite clearly establishes the fact that it is a retaining wall.

A certain mill-race, flowing in a westerly direction, crosses Alder Street at a right angle. The street paving was extended to the water's edge at this mill-race and at that point a concrete retaining wall was constructed, across the street to support a fill behind it, upon which the paving was laid. The complaint pleads a decree of this court in the case of *Patterson* v. *Chambers Power Co.*, 81 Or. 328 (159 Pac. 568), and *Eugene* v. *Chambers Power Co.*, 81 Or. 352 (159 Pac. 576). In those cases, the one issue pertained to the right of the defendant to widen the same mill-race that crosses Alder Street as above stated. Plaintiff insists that under the decree in those cases, the defendant became a trespasser, and exceeded its power, when it constructed the retaining wall and did some paving within the limits wherein the decree authorized the owners of the canal to widen the same. Turning to the opinion of this court in the case of *Patterson* v. *Chambers Power Co.*, upon which the decree in the Eugene case is founded, we find that the rights of the Chambers Power Co. and its successors are traced to a certain warranty deed, containing a clause which reads as follows:

"Together with the water-power upon said premises with the right of way over Shaw's land claim to bring all the water that may be required to run the mills thereon, and all other mills or machinery that may at any time or times, be placed upon the above described premises of whatever kind or nature; also the right to dig the present raceway as wide and deep as may be necessary, and to bank the dirt and stone on either side; also to include sufficient dirt and stone lying adjacent to the dams for the purpose of keeping them in repair."

The decree of this court permits the owners of the mill-race to widen it so as to bring it up to fifty feet in width. Such decree has not yet been utilized by the owners, and the width of the canal remains as before, while the adjacent land owners are still using their land to the water's edge. As was very properly said by this court in that case:

"The conveyance of an easement over land does not pass the title or interfere with the right of the owner of the soil to occupy it for any purpose not inconsistent with the easement; Washburn, Easements (3 ed.), 3, 9; Goddard, Easements, 4. It follows, therefore, that the plaintiffs who are successors of Shaw, had a perfect right to occupy and improve their land adjoining the ditch, so long as such occupation or improvement did not interfere with the operations of defendants. Defendants were never in a position to bring ejectment or trespass against them until they were in a position to show that the use of the adjoining land was necessary, and that the growth of manufacturing business upon the 23-acre tract made it essential for them to widen the ditch to procure additional power."

It follows that the city had a perfect right to extend its paving, and construct its retaining wall, where it did. It may be, that at some future time, the owners of the mill-race may require the destruction of a portion of this improvement, but that possibility cannot concern the present paving, for the city is not required to keep hands off of its streets until some uncertain time when the owners of the viaduct may see fit to enlarge their plant.

10. It is also urged that the city built more of the retaining wall than was necessary to support the paving. The evidence discloses that while the portion of the street which is paved is only 24 feet wide, the retaining wall is the full width of the street. The city

engineer testified that this was done with a view of making a permanent improvement of it, and to enable the fill to support sidewalks when they should be ordered. We think this to be a proper method of construction and not a departure from the purpose and proposed extent of the improvement.

The decree of the lower court is reversed and one will be entered here dismissing the suit.

REVERSED AND DISMISSED.

McBRIDE, C. J., and BURNETT and BENNETT, JJ., concur.